## JORDAN, USE, &C. V. GARNETT.

1. On a contract for the sale of some slaves by S to G, the latter transferred to S, by endorsing his name thereon in blank, a note made by one R to J, but which had never been assigned by him to G. A suit being brought against G on his assignment, in the name of J, for the use of S—*Held*, First—that an irregular assignment like this, which did not convey the legal title, was not embraced by the statute of 1828, defining the liability of endorsers. Second.—That the liability created by the assignment was, that the assignor would pay the debt, if by the use of proper diligence it could not be obtained from the maker of the note. Third—That what would constitute proper diligence, was a question of fact for the jury, under all the circumstances of the case, and that suit must be brought to the first term of the Court to which it could be brought after the maturity of the note, unless some valid reason, such as the insolvency of the party, &c. excused it.

Error to the County Court of Pickens.

THIS action was commenced in the Court below, by the plaintiff in error, against the defendant in error, on his indorsement of a note to one Green S. Stilwell, the note having been executed on the 1st January, 1836, by one Rezin Ridgeway, for the payment to the plaintiff, twelve months thereafter, of one thousand and eighty dollars. The declaration, which consists of seven counts, charges the transaction variously.

The first count charges the defendant as maker of a promi-

sory note, for the payment of one thousand and eighty dollars.

The second count charges that Ridgeway made a note payable to the plaintiff for one thousand and eighty dollars, and that afterwards, to wit, on the day and year aforesaid, the defendant indorsed his name on the back of the note, and delivered the same to the plaintiff, whereby he became liable to pay the same to the plaintiff, and being so liable, &c.

The third count charges as in the second count, that Ridgeway made a note payable to the plaintiff, and that afterwards, to wit, on the day, and at the place aforesaid, the defendant, in consideration that the plaintiff had before that time, to wit, on the day and year aforesaid, sold and delivered to the defendant, six negroe slaves, the said defendant signed and indorsed his name upon the back of the said note, and delivered the same to the plaintiff, and being liable to pay the same to the plaintiff, undertook, &c.

The fourth count is and also for that whereas, the said defendant, heretofore, to wit, on the 12th February, 1836, in consideration that the said plaintiff, Stilwell, had before then, sold and delivered to the said defendant, six slaves, the said defendant then and there made and delivered to the plaintiff, his promisory note, in manner following, to wit, the said defendant indorsed and delivered to the said plaintiff, Stilwell, a promisory note, made by Rezin Ridgway, dated 12th February, 1836, to wit, at &c., by which note the said Ridgway promised, on the 1st March, 1837, to pay William Jordan, jr. one thousand and eighty dollars, for value received, by reason whereof the said defendant became liable to pay the said plaintiff the said sum of money in the said note specified, according to the tenor and effect thereof.

The fifth count charges the making of the note by Ridgway to the plaintiff, as in the previous counts, and that the defendant, at to wit, &c. indorsed and delivered the said note to the plaintiff, and thereby appointed the same to be paid to the plaintiff and by said indorsement, guarantied and assumed the payment of the same to the plaintiff, and the plaintiff avers that the said Ridgway, though often requested to pay the same, to wit, when the same became due, and since, has failed and refused so to do, of all which, the defendant had notice, to wit, at &c. and the plaintiff avers that the said Ridgway was, when

the said note became due, and now is insolvent, of all which defendant had notice, to wit, at, &c.; by reason whereof, the said defendant became liable, &c.

The sixth and seventh, are the common counts in assumpsit.

To the first and the two last counts, the defendant pleaded the general issue, and demurred severally, to the second, third, fourth and fifth counts; which demurrer was sustained.

From a bill of exceptions taken on the trial of the issues in fact, it appears that the plaintiff offered in evidence, under the first count of his declaration, a note made by Rezin Ridgway, to the plaintiff, dated the 12th February, 1836, for the payment of one thousand and eighty dollars, on the 1st March, 1837, upon which note was indorsed, the name of James Garnett, the defendant, that being the only indorsement on the note, which being objected to by the defendant, the Court sustained the objection and excluded the note.

The plaintiff then proved the signatures of the defendant and Ridgway, to the note and indorsement in evidence, under the common counts, and also proved, that in the latter part of 1836, Stilwell sold to Garnett, a number of slaves, and that Garnett upon the sale, gave Stilwell the note above described, in consideration of the sale of the slaves, and indorsed the note to him. It was proved that some money was paid, but it did not appear that any thing was due for the slaves, beyond the amount of the note.

This being all the testimony, the Court charged the jury, that the plaintiff had the right to sue Garnett, as the indorser of the note, although Jordan had not indorsed the note to Garnett; that Garnett was not a co-promissor or maker of the note, and that in order to recover against the defendant, it was incumbent on the plaintiff to show that Ridgway had been sued to the first Court, after the note fell due, and to insolvency. That the only question in the case now was, whether the plaintiff could recover upon the count for goods sold; that the note could only be regarded as evidence of an indebtedness for the slaves, but that a promissory note could not entitle the plaintiff to recover under that count, unless he introduced other testimony to connect the note with the defendant, and show the consideration for which it was given.

The Court further charged the jury, that if they believed,

from the testimony, that Stilwell sold the defendant slaves, and that he had indorsed to the plaintiff the note sued on, in payment, that he could not recover on the common counts.

The plaintiff's counsel moved the Court to charge the jury, that if they believed the signature of Garnett, on the back of the note, to be genuine, and made for a valuable consideration, given to him by Stilwell, and that Garnett has not discharged the note, they must find for the plaintiff. That when the signature is proved, a promissory note is evidence, under the common money counts. That if the jury believe that Stilwell sold the defendant a number of slaves; that the defendant agreed to pay for them and has not done so, that the plaintiff is entitled to recover the value of the negroes in this action; which charges the Court refused to give—the plaintiff excepted.

The jury found a verdict for the defendant, and the Court rendered judgment thereon, from which this writ of error is prosecuted.

The assignments of error are,

1. Sustaining the demurrer to the declaration.
2. Excluding the note from the jury under the first count.
3. The charges given and refused.

CRABB & COCHRAN, for the plaintiff in error—contended, that the irregular indorser of a promissory note, not negotiable by the law merchant, is a co-maker. That when the consideration of the indorsement is for his benefit, he is liable upon his indorsement as an absolute undertaking to pay the amount of the note, or is at least, liable as guarantor, and cited, 8 Pick. 182; 13 Johns. 175; 14 ibid. 349; 3 Mass. 274; 4 ib. 258; 5 ib. 358; 7 ib. 233; 9 ib. 315; 11 ib. 436; 6 Conn. 315; 17 Wendell, 214.

PECK & CLARK, contra—maintained that this indorsement created a liability under the statute of this State, and that to recover, suit should have been brought against the maker of the note, to the first Court after the maturity of the note. 2 Porter, 312.

That if the indorsement was a guaranty, the suit should have been in the name of Stilwell to whom it was made.

That the indorser could not be liable as a maker, unless the

indorsement was made at the same time the note was executed, and upon the same consideration.

ORMOND, J.—The questions of law, arising on the pleadings and evidence in this case must be determined by the character of the contract on which the action is founded—the indorsement of the defendant.

The facts of the case are, that Stilwell, for whose use this suit is brought, sold to the defendant six slaves, and received from him in part payment a note, for one thousand and eighty dollars, made by one Ridgeway, to the plaintiff. The note was not due at the time, nor indorsed by the plaintiff, but was at the time of the transfer indorsed by the defendant in blank. What was the liability contracted by the defendant by his indorsement? The defendant's counsel, maintains that he was liable only as an indorser under the statute, of paper, not mercantile, whilst the plaintiffs counsel contends, that by the endorsement, he became either maker of the note or guarantor.

Previous to the passage of the act of 1828, endorsers of notes and bonds, were liable on their indorsements upon the principles of the law merchant, but this law being thought unsuited to that portion of our community, not engaged in commerce, the act referred to, was passed, by which it was provided, that the remedy on bills of exchange and promissory notes, payable in bank, should be governed by the rules of the law merchant. The 12th section then proceeds, "all other contracts in writing for the payment of money or property, or performance of any duty, of whatever nature, shall be assignable, *as heretofore*, and the assignee may maintain such suit thereon as the obligee or payee could have done, whether it be debt, covenant, or assumpsit: *Provided*, suit be brought to the first Court of the county where the maker resides, to which suit can be brought, and if he shall fail to sue the maker to the first Court as herein provided for, the indorser shall be discharged" &c. Aiken's Dig. 329.

It is perfectly clear, that the design of the Legislature in the passage of this act, was merely to simplify the remedy against indorsers of paper, not mercantile in its character, or payable in bank. This appears, not only from the language of the act, its obvious scope and design, but is expressly so stated

in the preamble. The intention was to provide for those cases of indorsements of paper, not mercantile in its character, where without the provisions of the act, the endorser would be liable to be sued, on demand of the maker and notice of non-payment. But in this case, if the act just cited, had never passed, the indorser, would not have been liable, according to the rules of the law merchant, as if the indorsement had been regularly made; it is therefore, neither within the letter or the scope and design of the statute of 1828; nor does it come within the mischief intended to be prevented.

What then was the obligation created by the indorsement of the name of the defendant on this note? We must presume that the parties intended something by the act, otherwise, the note would have been handed over to Stilwell, in the condition it was. That the defendant did not intend to bind himself as maker of the note, cannot be supposed. Had such been his intention, he would doubtless have written his name at the proper place to indicate such intention; nor is it more probable that Stilwell would have permitted him to write his name on the back of the note, as evidence of his liability as maker: Neither is it a fair inference, that the indorsement was intended as a mere guaranty that the note would be paid at maturity; such would not have been the effect of a regular assignment of the paper; and we cannot, in the absence of proof, presume that the parties contemplated a greater liability than would be created by a regular assignment, if the title had been in the assignor.

But as the defendant certainly intended to bind himself to some extent, we think his undertaking was an affirmation or warranty that the note when due, could be collected by due diligence from the maker, and this, we undertand, was the liability, at common law, in cases like this, as is satisfactorily shewn in the case of Mackie's executors v. Davis, 2 Wash. 219.

The Legislature of Virginia, had passed an act declaring choses in action assignable, and vesting the legal title in the assignee. The case cited, was the first attempt to recover of the assignor, suit having been brought against the maker of the note by the assignee, and the money not made. The Court held, that the assignee could maintain the action, not as a con-

sequence of the act authorising the assignee to sue in his own name, but upon common law principles. That the assignment of the note imported a debt, and as by the statute the assignee had authority to sue in his own name, it was his duty to bring suit against the maker. That the object of the law authorising the assignee to sue in his own name, was not intended to defeat the common law remedy, but merely to give the assignee a right which he had not at common law.

In Bradley v. Phelps, 2 Root's Rep. 325, in a case like the present, the Supreme Court of Connecticut, maintained the doctrine here laid down, and again explicitly affirmed it in the cases of Huntington v. Harvey, 4 Conn. 124, and Wilton v. Scott, ib. 527. The case cited by the plaintiffs counsel from 6 Conn. 315, does not at all militate against the principle here advanced. There, as in this case, the indorsement was irregular and blank, and the question before the Court, was not what the blank indorsement, unexplained imported, but whether it was not admissible to show by parol, what the contract of the parties really was; and it was held that such proof was admissible.

The cases referred to by the counsel for the plaintiff in error from New York and Massachusetts, do certainly, many of them, sustain the principle contended for by him. It is to be observed, however, that the statute of Anne, is in force in both of these States, and the decisions are founded on the supposed intention of the party, to enter into some contract, respecting the note on which the indorsement is found, as the irregular indorsement could not operate to charge the person making it as indorser; to prevent it from being entirely inoperative, they held it an agreement to be bound as maker or guarantor, according to the exigency of the case.

However proper such an inference may be in those States, for the reason given, we are satisfied that in this State, where a regular assignment of paper, not mercantile, imports a conconditional liability only, to hold that an irregular assignment would create an absolute, or a larger liability, without proof that such was the intention of the parties, would in the large majority of cases, if not in all, be in direct contravention of the contract, the parties supposed they had made.

Our opinion, therefore, is that an irregular indorsement like

this, on paper not mercantile, is not provided for by the act of 1828; that the liability thereby created is, that the assignor is liable to pay the debt, if by the use of proper diligence it cannot be obtained from the maker. What would constitute such diligence, would be a question of fact for the jury, under all the circumstances of the case. In Virginia and Connecticut, it has been held that if no valid excuse exists, the maker must be sued to the first Court after the maturity of the note; and as such is the requisition of our statute, where the assignment is regular, such would doubtless be the proper rule here, unless some valid reason, such as the insolvency of the maker, excused it.

Such being the law of the contract between the parties, we come now to consider it in reference to the pleadings, the second, third, fourth and fifth counts having been demurred to.— These counts are all substantially defective.

The second is framed on the supposition that one who is privy to the consideration, and endorses the note at the time it is made, thereby becomes a co-maker. If that were conceded to be the law, it appears from the count itself, that the note was not indorsed at the time it was made, but at a subsequent time; nor is there any averment connecting the indorser with the consideration of the note or the original parties to it. The third is founded on the supposition that the contract evidenced by the indorsement, was an absolute undertaking to pay the note.

The fourth, charges that by the indorsement, the defendant became liable to pay the amount of the note to Stilwell. From this it appears that the legal title or right of action is not in the plaintiffs, but in Stilwell, for whose use the suit is brought.

The fifth, charges the making of the note, and the endorsement by the defendants, and alleges that the defendants thereby guaranteed the payment of the note at its maturity; that the maker did not, on demand, pay the note at its maturity, but was then, and is now, insolvent, of which the defendant had notice, &c.

From this brief review, it appears that all the counts were framed on a mistaken view of the contract between the parties, and do not show any legal liability on the part of the defendant.

Upon the trial of the issues in fact, the Court correctly excluded the note and endorsement from the jury. It was not ev-

idence under the first couut, which charged the defendant as maker of the note, for the reasons already given; nor was it evidence under the common counts, because it imported no legal liability to the plaintiff in this action. It is not necessary to examine the charges of the Court, because no matter how erroneous they might be, they could not prejudice the plaintiff in this action.

The judgment is therefore affimred.