## Peters *v.* Hobbs.

Due diligence is, in all cases, required of the holder of a note, in making demand of payment at the time and place of payment, and in giving notice to the indorser of non-payment, in order to fix an unqualified liability upon him ; but what constitutes due diligence depends upon the circumstances attending each particular case.

The existence of war, and the military occupation of the country where the parties live and where a note is payable, whereby there was "a virtual interruption and obstruction of the ordinary regulations of trade," hindering the holder from presenting a note for payment, is a sufficient excuse for failure to do so during all the time such hindering cause exists; and so, where, after due search and inquiry, the maker cannot be found; and if the same cause prevents the party from giving notice to the indorser, he is excused.

When the causes which excuse presentment, demand and notice cease to exist, the duty, on the part of the holder of the note, with all due diligence, to make presentment, immediately arises ; and if he fail to do so, and on non-payment, to give notice, the indorser is.discharged.

Whether the circumstances, which excuse presentment of a note for payment, existed, and when they ceased to exist, are questions of fact to be ascertained by the jury from the evidence.

The protest of a note is evidence under the plea of non-assumpsit and issue ; and the certificate of the notary that he had mailed notice to the indorser is *prima facie* evidence of the facts stated.

Where the indorser specifies his place of residence in conjunction with his indorsement, the notice of protest may be directed to that place, and it devolves upon him to show that he did not reside there, or that was not his post office.

Under the general issue to the plea of non-assumpsit, proof of demand and notice at a time subsequent to the day of payment may be made, though the allegation in the declaration is, that on the day of payment "search and inquiry were made," and the parties could not be found—the real question being one of due diligence, and time being immaterial.

*Error to Phillips Circuit Court.*

Hon. James M. Hanks, Circuit Judge.

Watkins & Rose, for plaintiff in error..

The liability of the indorser in this case depends on two

things, having been rightly done—demand of payment, and notice of non-payment. Holder must use due diligence, for the indorser is only responsible after default by the maker. *2 John. Cas., 76; 2 Caine, 344.* Merely because the bank—the place where the note was payable—had removed, with its assets, was no reason why the demand should not have been made long before it was, and notice of non-payment thereupon given. Demand should be made at the time note is due; if demand cannot be made, notice should be given then. *1 McCord, 339.* Though the bank, or shop, be shut, presentment there, or to the parties personally, must still be made. *1 Parsons on C., 225,* and *n.* [*k.*] Indorsers are discharged by a neglect to demand payment at the specified place. *Ib., 227, note (v); Story on Prom. Notes, sec. 230, n. 1; Edwards on B., 483, 489, 490.* Though the bank is discontinued, the demand must be made there. See *Edwards on Bills, 498.* And if the rule be relaxed as to demand, notice must be given. *Parsons on Con., 226; Story on Prom. Notes, sec. 502, sec. 253.*

The memorandum by the notary, that notice of protest had been given was not an *official act,* so as to give it the dignity of evidence. *9 N. H., 558; Gould's Dig., 807, sec. 9.* The contents of this notice should have been proved by parol. *13 John., 407.* Nor was it shown that the notice was directed to the post office of the indorser, or any post office. *Story on Prom. Notes, sec. 341 to 347.*

Even if the holder were excused from presentment and demand, at the time the note fell due, there can be no good reason why they were not made on the 13th June, 1865, and notice immediately given to the indorser; for on that day the insurrection was declared to be suppressed, and commercial intercourse was restored.

The declaration alleges an attempt to present the note on the right day, and failure, and on that day notice to Peters. On the trial it was attempted to prove a demand and notice at a day long after. Though it is not necessary to aver the precise day of demand and notice, (*2 Conn., 478,*) the question here is

whether, on this averment of failure to make a demand for the causes stated, proof will be let in of presentment and demand at any other day subsequent.

The question of diligence (when the facts are not disputed) is a question for the court. *6 Metc., 290; 3 Shep., 263; 6 S. & M., 255; 6 Eng., 504; 14 Ark., 336;* and it is submitted that the evidence in this cause does not show due diligence either in making the demand or giving notice.

GARLAND & NASH, for the defendant.

The evidence clearly shows that in consequence of war existing when the note fell due, there was a virtual interruption or obstruction of trade between the place where the note was made payable and the residence of the defendant; and it is equally clear, from the authorities, that in such case the plaintiff was excused, from making presentment and demand and giving notice, from. payment. *Story on Prom. Notes, 205, et. seq., 237, 257, 264; Kent, 66; 4 Mass., 45; 4 Serg. & R., 480; 1 Watts & Serg., 126, and authorities cited.*

WALKER, C. J.

Hobbs brought his action of assumpsit against John B. Cobb, maker, and George B. Peters, payee and indorser of a promissory note, payable at the branch bank of the Planters' Bank, at Memphis, Tennessee, on the 16th day of January, 1863. The note was indorsed "George B. Peters, Walnut Bend, Ark." A demurrer was sustained to the first count in the declaration, and upon the second count issue was taken upon the plea of non-assumpsit. A discontinuance was entered as to Cobb, the maker, who had not been served with process, and upon a trial before a jury, a verdict and judgment thereon were rendered against Peters, the indorser, for the amount of the note and interest thereon.

The defendant, Peters, has brought the case before us by writ of error, and contends that he is discharged from his liability,

as indorser, to pay the note, by the neglect and omission of the plaintiff to demand payment of Cobb, the maker, and in default of payment to give him, as indorser, notice of such non-payment.

As a general rule, to charge the indorser, a demand of payment should be made of the maker, at the place where payment is to be made, on the day on which the note fell due, and if not paid, notice of non-payment given to the indorser without delay. Due diligence, it seems, is in all cases required of the holder, in this respect, in order to fix an unqualified liability upon the indorser. What constitutes due diligence depends upon the circumstances attending each particular case. The rule seems to be founded upon commercial convenience and necessity. Mr. STORY says: " The object in all such cases is to require reasonable diligence on the part of the holder, and that diligence must be measured by the general convenience of the commercial world, and the practicability to accomplish the end required, by ordinary skill, caution and effort. Due presentment must be interpreted to mean, presented according to the custom of merchants, which, necessarily, implies an exception in favor of those unavoidable accidents which must prevent the party from doing it within the regular time. *Story on Prom. Notes, 319.*

Among the several causes which will excuse a failure to make presentation for payment at the time the note falls due, are " the prevalence of political circumstances, which amount to a virtual interruption and obstruction of the ordinary negotiation of trade; the breaking out of war, and the military occupation of the country, where the parties live, or where the note is made payable, which suspends commercial intercourse, or the utter impracticability of finding the maker, or finding his place of residence." *Id.*

The plaintiff relies upon the existence of several of these causes as an excuse for having failed to present the note for payment when due, and there can be no doubt but that it is a sufficient excuse, when shown to exist, during all the time

that such hindering cause exist; and to comply with the requirements of the law so soon as the hindering cause is removed, is due diligence. The excuse averred in the second count in the declaration, and upon which alone issue was taken, is set forth in the following language: "And the said plaintiff avers that, afterwards, when the said promissory note became due and payable, according to the tenor and effect thereof, to wit: on the 19th day of January, 1863, diligent search and inquiry were made after the said branch of the Planters' Bank of Tennessee, and after the said defendant, John B. Cobb, to wit: at Memphis aforesaid, and elsewhere to wit: at the county and State aforesaid, in order that the said promissory note might be presented and shown for payment thereof; but that the said branch of the Planters' Bank, and the said John B. Cobb could not on such search and inquiry be found."

To sustain this issue, the plaintiff gave the note declared upon and the assignment thereon in evidence, and also proved by the evidence of the cashier of the said branch bank, that he, the witness, as cashier, left Memphis with the assets of the bank on the 28th day of May, 1862, and returned to Memphis with them in the month of September, 1865, and that said bank transacted no business during that time; and, also, by a witness, that he resided in Helena in January, 1863; that Helena was then held by the military forces of the United States; that persons could not pass in or out of the lines, or ship goods without permits from military authorities; that witness was not in Memphis in January, 1863, but was there in December, 1862, and April, 1863; that Memphis was held by military authority just as Helena was; that the political condition of the country was such as amounted to a virtual suspension of the ordinary commercial transactions of the country; there was a mail carried between Memphis and Helena, but none along the river between those points; that boats could not land along the river between these points without permits. The plaintiff also offered in evidence against

the objection of the defendant, the protest made by a notary public, in the usual form and attestation, by which it appeared that he, as notary public, presented the note in suit at the old banking house of the branch Planters' Bank, Memphis, and demanded payment thereof from D. A. Shepherd, cashier, and was answered that the said note would not be paid; that the said notary also made diligent search and inquiry for John B. Cobb, maker of said note, but could not find him, or any one who would pay said note. All of which was done at Memphis, on the 6th day of September, 1865, and that on the same day, he, as such notary public, directed a written notice of the instrument of protest to George B. Peters, at " Walnut Bend, Arkansas," and placed the same in the post office at Memphis, before the departure of any mail, postage paid. Upon this evidence, under the instructions of the court, the jury rendered their verdict in favor of the plaintiff.

In view of the state of case made by the evidence, we are satisfied that the holder of the note, the plaintiff, under the rules stated above, has shown sufficient excuse for not presenting the note for payment on the day it fell due, and thenceforward, during all the time in which, for any of the above enumerated causes, there was "a virtual interruption and obstruction of the ordinary negotiations of trade."

But it is contended for the defendant that if, owing to the existing circumstances, the holder of the note should be excused for not having presented the note for payment when due, that, notwithstanding this, he should have given notice of non-payment to the indorser.

It is true that due diligence is necessary, as well in giving notice to the indorser as in the presentment for payment, in order to fix upon the indorser a liability to pay the debt; and a failure to use due diligence, whether in the one or the other, would be as fatal to the recovery of the holder as against the indorser, as if neither of these prerequisites to his right of action had been complied with. But when the same causes which prevented the holder from presenting the note for pay-

ment, when it became due and payable, also exist to prevent his giving notice of non-payment to the indorser, the holder is excused for having failed to do either.

The case referred to, by the counsel for the plaintiff in error, to sustain the proposition assumed by them, (*Executors of Price v. Young, 1 McCord, 309,*) only supports their position to the extent that where there is an excuse which only relieves the holder of the note from the necessity of presenting it for payment, but does not extend also to the indorser, notice must be given to the indorser, or he will be discharged from payment. In the case of *Executors Price v. Young,* Bryor, the maker of the note, died before the note fell due, wherefore, presentment could not be made; but the indorser resided so near, that notice could have been given him in five hours. The court said: "In some cases it is a question whether it is practicable to have given an earlier notice than that which is in proof, and this depends on the local situation of the parties, and the means of communication."

But, in the case before us, so far from an open communication, the same causes which prevented the presentation of the note for payment apply with equal force to the giving of notice of non-payment to the indorser, and the hindering cause extending alike to both, the holder is excused from the performance of either.

It is not contended for the defendant in the court below, that, conceding the causes which excused the plaintiff from presenting the note for payment when due, and from giving notice to the indorser of such non-payment, to have been sufficient at the time the note fell due, and so continued during the war, still there was a time from June until September, 1865, after peace was proclaimed, during which the plaintiff might and should, in the exercise of due diligence, have presented the note for payment, and if not paid, to have notified the indorser of the fact; and that, having failed to do so, the defendant, as indorser, is discharged from all liability to pay.

We have no doubt but that the plaintiff was only excused

from the necessity of presenting the note for payment at the branch bank at Memphis, when it fell due, because of the hindering causes then existing, and which continue to be an excuse so long only as the cause of impediment existed: as, for instance, in case of the prevalence of cholera, or yellow fever, in a city or place of payment; during its prevalence, the holder of the note would not be required to peril his life, in order to make such presentment; but so soon as the epidemic had passed off, or so far subsided as no longer to endanger life, as the hindering cause had ceased, so, instantly, would arise a duty on the part of the holder, with all due diligence, to make such presentment, and a failure to do so, and, if not paid, to give notice of such non-payment to the indorser, would as effectually discharge him from further liability to pay, as a failure to make presentment under ordinary circumstances would.

Whether such circumstances have intervened as will excuse the holder from presenting the note for payment at the time it fell due, and when they ceased to exist, are questions of fact to be ascertained from the evidence by the jury, as repeatedly held by the American courts. *Jordan, use, v. Garnett, 3 Ala.,* *617; 15 Ala., 391; Laughlin v. Marshall, 19 Ill., 390.*

The first instruction given by the court to the jury, at the instance of the plaintiff, the third instruction given at the instance of the defendant, and that given by the court upon its own motion, taken together, in substance, say to the jury: If you find from the evidence that, at the day the note fell due, a state of war existed, or that such political circumstances existed as amounted to a virtual interruption and obstruction of the ordinary negotiations of trade between Memphis and Walnut Bend, Arkansas, it is a sufficient excuse for not having presented the note at the time it fell due. And if you shall also find, as soon after the removal of such cause as possible, such presentment and demand were made, such facts sustain the allegations in the second count, and they shall find accordingly; and, unless they so find, and the evidence agrees with the allegations in the second count, they must find for the defendant.

This is, in substance and effect, the instruction given by the court to the jury, which, when tested by the rules already announced as governing such cases, we think was properly given. Whether the facts, as disclosed in evidence, were sufficient to warrant the finding of the jury is another question, of which we will presently consider.

The first instruction asked by the defendant was properly refused. It would not have been proper in the court to instruct the jury that the plaintiff should prove that he made due presentment at Memphis on the day the note fell due, because, from the evidence, he was excused from doing so.

The second instruction asked by the defendant was also properly refused. The court had already given instruction as to what would excuse due presentment; but this instruction embraced these and every other cause enumerated by Story, in his work on Promissory Notes, many of which had no application to the case as made out in evidence, and were in this respect abstract and calculated to mislead the jury. So far as it was applicable to the state of case, it was but a repetition of what had already been given to the jury.

It is next objected that the circuit court erred in permitting the protest and notice to be given in evidence. No special cause of exception was pointed out. The protest and notice are in the usual form and mode of authentication. They were material and proper evidence under the issue, and we perceive no objection to admitting the evidence to go to the jury. If objectionable, the objection should have been pointed out, so that the plaintiff might have offered other evidence. Having failed to do this, even if there had been an objection which if pointed out would have been sufficient to exclude the evidence, this court will not consider it. *Blackburn v. Morton, et al., 18 Ark., 392.*

The counsel insist that the notice, certified by the notary public to have been given, is insufficient. The statement of the notary is as follows:

" On the 6th day of September, 1865, I directed a written

notice of the above instrument of protest to Geo. B. Peters, Walnut Bend, Arkansas, and placed the same in the post office at Memphis, before the departure of any mail, postage paid.

"A. J. WHEELER, *Notary Public.* [seal.]"

To the sufficiency of this, counsel object, first, that the certificate of notice is not an official act of the notary, and therefore his certificate is not evidence. We think this objection is not well taken; first, because, if objectionable, the objection should have been taken in the court below. Had this been done, for aught that we can say, the plaintiff might have supplied other and ample evidence of notice; and second, because it is a part of the official duty of the notary public to give such notice, and of which his certificate is evidence, *prima facie,* as expressly declared by statute passed February 25, 1859.

It is not objected by counsel that the notary does not certify that at Walnut Bend there was a post office, or the nearest post office to the defendant. Apart from the reason that this, like the other objection to the notice, was not pointed out in the court below, we do not think the objection well taken. " Walnut Bend, Arkansas," was the address given when the note was indorsed, and, in the absence of evidence to the contrary, we must presume that the defendant continued to reside there. If such was not the case, or that was not the defendant's post office, he should have shown it.

It is next objected that the evidence, if sufficient in other respects, was inadmissible under the second count of the declaration ; first, because proof of presentment and notice does not sustain the averment of an excuse for not having made such presentment ; and secondly, that proof of demand and notice, on the 6th of September, 1865, does not sustain the allegation that " search and inquiry was made for the bank and the maker of the note on the 19th of January, 1863."

It is true that this evidence, at first view, would seem to vary materially from the allegation; but when we remember that, after all, the real question at issue is one of " due diligence," and

that an excuse for not doing what the law would otherwise require to be done, is equivalent to having done so, the apparent objection is removed. The true question, as held by this court in *Ex'r. of Ashley v. Gunton, 15 Ark., 415*, is whether due diligence has been used by the holder, not whether he has given notice, or the indorser has received it. And the Supreme Court of the United States, in *Decker v. Bealer, 10 Peters, 580*, said: " Where the holder or notary can not give the notice, or does not know where to direct it by mail, the inquiry is due diligence without notice."

Thus considered, the averment in the declaration was, in effect, one of " due diligence," because inquiry and search were " due diligence," and whether the evidence was, that search had been ineffectually made to find the maker, or that due presentment for payment had been made, with notice, due diligence would be proven. And so, too, with regard to time. The law required that the holder should present the note, when due, at the bank for payment; but if, owing to the existence of war, or other cause, the holder was excused from doing so, even for a series of years, if, after the obstruction is removed, he without unnecessary delay makes such presentment, and gives notice, it is, in legal effect, due diligence. The time laid in the declaration in such case is immaterial, because it matters not when the proof shows the act to have been done, provided it was done with due diligence. And so this court held, in *Roselle v. Pennington and Jay, 24 Ark., 277*, citing with approval *Halleville v. Patrick, 14 Ark., 208*. And in a case much like the present, reported in *3 Cowen, 262, Williams v. Mathews*, WOODWARD, J., said: " The general principle is, that the holder must use due diligence, for the indorser is only responsible after a default on the part of the maker." The declaration was in the usual form, stating a demand on the maker, and a refusal to pay, and notice to the indorser. The court considered the precise question raised in this case, that is, if the maker, when the note falls due, cannot be found, nor payment demanded of him personally, should not the declaration state this fact specially, instead of

averring generally that the note was presented and payment refused. And it was held "that evidence of due diligence in the holder to obtain payment, without an actual demand, will support the averment; and, under such a count, the plaintiff may give evidence of any diligence, which is deemed equivalent to actual presentation to the maker." Thus, we think, it is clearly shown, as well upon principle as authority, that the court below did not err in permitting the evidence to go to the jury upon this issue.

The remaining question is as to the sufficiency of the evidence to warrant the verdict of the jury. There is certainly lacking much evidence, which, it seems, from its nature, the parties could, with proper diligence, have procured. Except the note upon which suit was brought, all of the evidence related to the question of diligence. The evidence abundantly shows that when the note fell due, both Helena and Memphis were in military occupation, and that, unless by military permission, all intercourse, trade and business were suspended; and that such was the condition of affairs for some time, but when it ceased is not shown. The jury could only take into consideration the facts in evidence before them; even matters of public history of passing national events could not be considered. There was no total lack of evidence, however, upon this question. The jury have considered it in connection with the instructions given by the court, and have rendered their verdict, and under our oft-repeated decisions, where the question turns upon the weight of evidence, this court will not set aside the verdict and grant a new trial. Under such circumstances, to do so would be to usurp the peculiar duty and office of the jury, and to sit in judgment upon the correctness of their conclusions from the evidence.

Judgment affirmed.