# Mobile Savings Bank *v.* McDonnell.

*Action on Promissory Note, or Due-Bill, against Indorser.*

1. *Note payable "on call."*—A promissory note, or due-bill, payable "on call," is the same as if payable "on demand."

2. *Statutory liability of indorser of non-commercial notes.*—The statutory provisions which define and regulate the liability of indorsers on notes not payable at a bank, private banking-house, or other certain place designated in the instrument (Code, §§ 2112-16), apply equally to

[Mobile Savings Bank v. McDonnell.]

regular and irregular indorsements, and to notes payable on demand, or "on call."

3. *Same; sufficiency of complaint.*—In an action against the indorser of such non-commercial notes, the complaint must aver a compliance with the statutory requirements necessary to fix his liability, or a statutory excuse for non-compliance.

4. *Action on note payable on demand, or call, without previous demand.*—An action lies on a note payable on demand, or "on call," without a previous demand, the institution of the suit being deemed a sufficient demand; and to charge the indorser, where the note is non-commercial, suit must be brought to the first court after the indorsement was made, unless a statutory excuse for the failure to sue is averred and proved.

5. *Custom in Mobile, as to notes payable "on call."*—The custom among banks and bankers in Mobile, as proved in this case, by which, "when money is loaned to customers on satisfactory paper, payable on call, such paper bears interest from date, and payment is liable to be called for at any time, but the paper does not become due until called for," does not abrogate or conflict with the legal principle above stated, that the institution of a suit is a legal and sufficient mode of making a demand; nor does it extend the liability of the indorser, when suit is not brought against the maker to the first term after the indorsement was made.

APPEAL from the City Court of Mobile.

Tried before the Hon. O. J. SEMMES.

This action was brought by the appellant, a domestic corporation, against James McDonnell, and was commenced on the 4th June, 1886. The cause of action was the defendant's indorsement of a note, or due-bill, which is copied in the opinion of the court. By its several rulings on the pleadings, the court below held that the defendant was discharged, because of the plaintiff's failure to sue the maker to the first court; and these rulings are now assigned as error.

HAMILTONS, for appellant.—(1.) Under the averments of the complaint, which are admitted by the demurrer, the paper sued on bore interest from date, and was only payable when payment was demanded, showing that it was intended to be a continuing security.—9 Mees. & W. 15, 18; 1 McL. & Y. (Excheq.) 338; 15 E. C. L. 55; 29 N. Y. 172; 24 N. Y. 308; 41 N. Y. 586; *Merritt v. Todd*, 23 N. Y. 34; 60 N. Y. 265; 98 N. Y. 379; 50 Amer. Rep. 686; 100 N. Y. 539; 58 Amer. Rep. 231; 4 Bing. 496; 4 Barn. & C. 325; 1 Dan. Neg. Instr., §§ 599, 607, 610. (2.) The intention and meaning of the parties must be ascertained by reference to the custom or usage of bankers in Mobile.—3 Kent's Com. 260; 3 Phil. Ev., C. & H. Notes, 1411-12; 6 Porter, 123; 14 Ala. 259; 32 Ala. 621; 28 Ala. 704; 11 Ala. 489; 57 Ala. 440; 73 Ala. 401; 23 Ala. 420; 9 Wheat. 581; 11 Wheat.

[Mobile Savings Bank v. McDonnell.]

431; 9 Mass. 157; 9 Metc. 583; 9 Pick. 385; 23 How. 431; 18 Johns. 230; 17 Wend. 306; 8 Serg. & R. 533; 3 Rawle, 101; 2 Nott & McC. 9; 2 Peters, 137; 14 Peters, 318; Morse on Banks, 435; Lawson on Usages, 53; 3 El. & Bl. 703, 718; 2 Whart. Ev., §§ 959, 969.

J. LITTLE SMITH & G. L. SMITH, *contra.*—(1.) The defendant's liability is to be determined by statutory provisions only, and he is discharged because suit was not brought against the maker to the first court.—Code, § 2112; *Jordan v. Garnett,* 3 Ala. 614; *Hooks v. Anderson,* 58 Ala. 239; *Milton v. DeYampert,* 3 Ala. 649; *Price v. Lavender,* 38 Ala. 390; *Cook v. Insurance Co.,* 53 Ala. 39; *Thomason v. Cooper,* 47 Ala. 563. (2.) The instrument is plain and unambiguous, and its legal effect can not be varied by evidence of custom or usage.—*Preston v. Ellington,* 74 Ala. 138; *Coleman v. Siler,* 74 Ala. 435; *Pettus v. McKinney,* 74 Ala. 114; *Day v. Thomas,* 65 Ala. 271; *Boykin v. Bank,* 72 Ala. 270; *Sanford v. Howard,* 29 Ala, 693; *Insurance Co. v. Pruitt,* 74 Ala. 487; *White v. Nat. Bank,* 102 U. S. 661; 1 Wall. 166; *Tucker v. Fairbanks,* 98 Mass. 102; *Bartlett v. Hawley,* 120 Mass. 92; *Tankersly v. Graham,* 8 Ala. 250; *Holt v. Moore,* 5 Ala. 521; *Hightower v. Ivey,* 2 Porter, 308; 3 Stew. 275; *Carleton v. Fellows,* 13 Ala. 437; *Free v. Hawkins,* 8 Taunt. 92; Minor, 357.

CLOPTON, J.—This action was brought by appellant against James McDonnell in his life-time, the testator of appellee, as indorser of a note, of which the following is a copy.

*"Mobile, May 19th, 1884.*

*"Due the Mobile Savings Bank sixty-five hundred dollars, value received, payable on call.*

*$6,500.*                                    "P. BURKE."

The complaint contains several special counts, to each of which a demurrer was interposed and sustained. While the special counts present the claim in different forms, a decision of the case does not require the consideration of many questions raised and argued. The liability of the indorser is determinable on the sufficiency and legal effect of the following substantial averments, which on demurrer are assumed as true: That the consideration of the note was a loan of money, and it was indorsed contemporaneously with the loan. By a custom prevailing among the banks in Mobile, known

[Mobile Savings Bank v. McDonnell.]

to the indorser, a note payable "on call" bore interest from date, and did not become due until payment was called for or demanded. Interest was paid to February 1st, 1885, and in July thereafter payment of the note was called for. On failure to pay, suit was instituted against the maker, to the first court to which suit could be brought after call for payment was made, and judgment obtained. Execution having been issued and returned "no property," this action was instituted against the indorser. The defense is, that the indorser is discharged by reason of the failure of the plaintiff to use the statutory diligence in bringing suit against the maker. This is the decisive question of contention, the solution of which depends on the applicability and construction of the statutes defining the liability of indorsers on noncommercial paper; several terms of the Circuit and City Courts having passed after the making of the indorsement, and before call for payment, and institution of suit against the maker.

A note payable "on call" is the same as payable "on demand," and we shall so consider the note in suit.—1 Dan. Neg. Inst. § 599.

The *status* of a party, whose name is irregularly indorsed on paper not mercantile—whether a co-maker, surety, guarantor, or strictly an indorser, or dependent upon intention—is now an unimportant and immaterial question in this State. By the doctrine too well and long settled, by both judicial construction and legislative enactments, to be the subject of controversy, the contract of the indorser on such paper is conditional, and does not become an absolute undertaking, except upon compliance with the requirements of the statutes regulating and determining the liability of such indorsers, or on a sufficient excuse for non-compliance. *Jordan v. Garnett*, 3 Ala. 610; *Price v. Lavender*, 38 Ala. 389; *Hooks v. Anderson*, 58 Ala. 238. And a complaint against the indorser, which fails to aver or excuse suit against the maker as required by the statutes, does not disclose a substantial cause of action.—*Cook v. Mutual Ins. Co.*, 33 Ala. 37. The statute requires that: "On all contracts assigned by writing, except bills of exchange or other instruments, and notes payable in money at a bank, or private banking-house, or a certain place of payment therein designated, to charge the indorser or assignor, suit must be brought against the maker in the county of his residence, to the first court to which suit can properly be brought, after

making the indorsement or assignment; and if judgment is obtained, execution must be issued, returnable to the next court thereafter, and his inability to answer such judgment proved by the return of 'no property.' "—Code, § 2112.

This, and correlative sections of the Code, had their origin in the act of 1828, and the judicial construction of the act, which was enacted, as stated in the preamble, because "much injury has been done to the citizens of this State, by means of the uncertainty of the decisions of the courts of this State, in relation to the proper time at which indorsees of bills, notes, bonds, and other instruments made negotiable by indorsement, by law, shall make demand of payment of the payers of such negotiable instruments." To remedy, the evil, the act, after declaring that the remedy on bills of exchange and notes payable in bank shall be governed by the rules of the mercantile law, as to days of grace, protest and notice, made assignable all other contracts in writing, for the payment of money or property, or for the performance of any duty, and authorized the assignee to maintain such suit thereon as the obligee or payee could have done; "provided, suit be brought to the first court of the county, where the maker resides, to which suit can be brought; and if he shall fail to sue the maker to the first court, as herein provided for, the indorser shall be discharged from liability, unless suit shall be delayed by his consent."—Clay's Dig. 382.

In *Jordan v. Garnett, supra*, which was decided in 1842, the act was construed as not providing for an irregular indorsement on paper not mercantile; and it was held, that the indorser was liable to pay the debt, if it could not be obtained from the maker by the use of proper diligence; but it was further held, that by analogy, to constitute such diligence, the maker must be sued to the first court after the maturity of the note, unless the failure to sue was excused by some valid reason. This interpretation of the statute was followed in the subsequent case of *Fulford v. Johnson, Hendon & Co.*, 15 Ala. 385. By this judicial construction, such irregular indorsements were practically brought under the influence of the act of 1828, which was incorporated, by legislative enactment, in the Code of 1852, and now constitutes section 2116 of the Code of 1876. This section provides, that all assignments, or indorsements in writing, of the contracts embraced by the provisions of sections 2112 and 2113, whether *regular* or *irregular*, must be construed as

within the meaning of sections 2112 to 2115, inclusive, unless the contrary clearly appears from such assignment or indorsement. And while the provisions are extended to both regular and irregular indorsements, the statute specifically enumerates the causes which shall excuse from bringing suit, obtaining judgment, and issuing execution, as thereby required, which is a significant and material departure from the act of 1828.—Code, § 2115. The complaint does not aver either of these excuses.

The terms of section 2112 are sufficiently comprehensive to include the note in suit—"all *contracts* assigned by *writing, except bills of exchange, or other instruments, and notes payable in money at a bank, or private banking-house, or a certain place of payment therein* designated." A note payable on demand is not embraced in the statutory exceptions, and to incorporate such exception by construction would be judicial legislation. This legislation has relieved us of the embarrassment which might otherwise arise from the contrariety in the decisions, and of having to choose between the conflicting rules maintained by different courts independent of statute, in reference to the time presentment must be made and notice given, to charge the indorser of a note payable on demand. The statute prescribes the time and mode of demand. Neither the convenience of the maker to pay, nor notion of credit, nor the pleasure of the holder, nor the unexpressed intention of the parties, is to be considered or regarded. The statutory rule is simple and definite, operating to withdraw the questions of time and mode of demand, and of the excuses to be deemed valid, from the province of judicial interpretation and decision. Whether a note is payable at a designated time, or on demand, the statute peremptorily declares, that in order "to charge the indorser, or assignor, suit must be brought against the maker in the county of his residence, to the first court to which suit can properly be brought, after making the indorsement or assignment." Which is the first court to which the holder can properly bring suit after making the indorsement, is the sole question which the statute submits to ascertainment by the court. This being determined, the statute operates to discharge the indorser, unless suit is brought to such court, or unless bringing suit is excused by reason of some one of the enumerated statutory excuses.

Ordinarily, suit may be properly brought on a note payable on demand, without a previous call for payment; no day of

payment being designated, a present duty is imposed.   The statute of limitations commences to run from the date of the note.—*Owen v. Henderson*, 7 Ala. 641.   And in *Hunter v. Wood*, 54 Ala. 71, it is said: "It has been long settled, whether logically or not, that suit on a note payable on demand may be brought without a previous request of payment, the bringing suit being itself considered a lawful demand." For the purposes of suit, such paper is regarded as presently due and payable.   On the day succeeding the execution of the note, and making the indorsement, the plaintiff could have properly and legally instituted suit against the maker, unless something intervened to take it without the operation of the general rule.   The statute was enacted without modification or qualification, in view of the legal rule, that the holder could properly bring suit on a demand note without a previous demand of payment.   The legal rules governing the time when suit may be properly brought on any of the contracts embraced, are incorporated in the statute by general reference.

Appellant contends, that by the usage among the banks in Mobile, the note in suit did not become due, and was not suable, without a previous demand of payment, and that suit against the maker to the first court after such demand is a compliance with the statutory conditions.   In considering the effect of the usage, it should be borne in mind that the controversy is between the *holder* and *indorser*, and relates to the contract of indorsement; and the question is, whether it operates to change or modify the general rule, and to postpone the time when suit could have been properly brought against the maker.   The office of a usage or custom in trade has been often considered, and may be regarded as settled. Generally, it is used as a mode of interpretation, and its proper office is to ascertain and explain the meaning and intention of the parties to a contract, when this can not be done without the aid of extrinsic evidence.   It may be used to incorporate a stipulation or element in respect to which the contract is silent, and in such case becomes a part thereof. Though the dealings of parties are presumed to be conducted in reference to an established and known usage, and the same may therefore be employed to supply the unexpressed, or to explain the dubious terms of their agreements, it is inadmissible to vary, contradict, or explain the express, or clearly implied terms.   And while it may be admitted to modify the *application* of the general rules of law, usage or custom

can not effectually contravene or displace any of the general principles of statutory or common law. It is powerless to perform the office of legislation.—*East Tenn., Va. & Ga. R. R. Co. v. Johnson*, 75 Ala. 576; *Grace v. Am. Com. Ins. Co.*, 109 U. S. 278.

We have not stated the foregoing general principles for the purpose of testing the validity of the alleged custom; but to enable us, by construing it in harmony with them, to reach a correct conclusion as to its scope and operation. Under our construction, it becomes immaterial, and of unnecessary decision, whether or not, were its effect and operation as contended, the custom is repugnant to the statutes and to legal rules; whether or not, instead of modifying the application of the principles of statutory and common law, it abrogates the statutory provisions and the legal rule, that a note payable on demand is properly suable without a previous request of payment; and contravenes and displaces the statutory conditions on which the liability of the indorser becomes an absolute undertaking. All customs in derogation of statutory or common law should be strictly construed, and nothing will be presumed to be within them, which is not clearly implied. The usage should be construed in connection with the statutory provisions, and a field of operation given limited to its proper office, if reasonable, without overriding or colliding with the statutes. The averments of the complaint are: "*That it was then, and for a long time before had been, the usage and custom of the several banks in the said Port of Mobile, to loan and advance money to their customers upon satisfactory paper, payable on call; and according to such usage and custom of said banks, such paper bore interest from the date thereof, and payment was liable to be called for by the loaner at any time, but until called for such paper, according to such usage and custom, did not become due.*" As to interest, the usage may avail; but it does not operate to postpone the suability of the note. The right of the holder to call for payment at any time is expressly recognized, and no particular mode of calling is fixed or prescribed. The implication is, that he may make demand in any manner authorized by the law, independent of the usage. The usage does not conflict with the rule, that the institution of a suit is considered a lawful demand. If suit were brought without a previous request of payment, the usage would not avail to abate it as prematurely brought; nor to prevent the statute of limitations to commence to run from

the date of the note.    While it may be that, as between the holder and the maker, the note does not become due for some purposes until call for payment, we are unable to see in what respect the usage varies or modifies the legal effect of the note as to suability, to which alone the statute has reference in respect to the liability of the indorser.

The purpose and policy of the statutes relate to the protection of the indorser, by requiring speedy suit against the maker, and the money obtained from him, if by such diligence it can be done; founded on the moral and equitable principle, that the maker should pay his own debt to the exoneration of the indorser.    It is not the intention of the statutes to submit to the holder, in any case, the determination of the time when suit shall be brought.    The power to extend or waive is solely lodged with the indorser, and the extension or waiver is valid and binding only when he consents in writing signed by him.—Code, § 2114.    By the law and the usage, the plaintiff had the right to demand payment at his will, and to make such demand by bringing suit.    In such case, the statute is mandatory, that, as between the holder and the indorser, in order to charge the latter, the former shall exercise the right and make demand by bringing suit against the maker to the first court to which suit can properly be brought after making the indorsement.    The date of making the indorsement is the initial point of time in the computation, and *properly* is the qualifying and controlling word in reference to the court to which suit must be brought.    Suit can be properly brought, when the law confers the right to sue.    Under this construction of the usage, it does not contravene any of the statutory provisions; the plaintiff is not permitted to determine at pleasure the term of the court to which suit must be brought against the maker to charge the indorser, and the policy of the statute is upheld.    No hardship nor uncertainty in such transactions results from this conclusion.    Whoever accepts a note payable on demand, *indorsed*, may protect himself by requiring the written consent of the indorser to extend or waive the time for bringing suit.

The result is an affirmance of the judgment.