DERRICK *vs.* BAKER, adm'r.

1. The question, whether the bailment of a sum of money, is of such a character, as will make the bailee responsible without a demand made, in consequence of the use of the money delivered, is a question of fact; and the evidence from which the fact is to be ascertained, is for the consideration of the jury.

Error to Madison Circuit court.

Assumpsit, before *Lane*, J.

Plaintiff's intestate, being about to take a journey to foreign parts, left a sum of money with defendant, to be distributed among his relatives, in case he never returned. The intestate died on the journey, and the money not being appropriated by defendant, according to the intention of the intestate, this action was brought to recover it.

Defendant requested the court to charge the jury, that if they believed the money was left with defendant as alleged, yet no action could be sustained for its recovery, unless after demand made,—which was declined. The court charged the jury, that if at any time after the bailment, bailee parted with the money, an action could be sustained without demand; all of which was excepted to, and here assigned as error.

*McClung*, for plaintiff in error.
*Hopkins*, contra.

GOLDTHWAITE, J.—In the consideration of this case,

Derrick *vs.* Baker, adm'r.

we are led necessarily into an enquiry into the precise character of the bailment, and of the duties to be performed by the bailee. If the character of the bailment can be determined, and the duties of the bailee ascertained, the solution of the questions presented by the bill of exceptions will be without difficulty.

It is sufficiently clear from the evidence, that if the bailor lived, the money was to be returned to him, and was to be distributed only in the event of his death. The expression of this wish, or rather the direction given by the bailor, created neither a gift nor a will, nor could it be effectual, as a *donatio causa mortis.* It was entirely inoperative, as its performance would not, in law, have discharged the bailee from the liability to account to the personal representative of the bailor, after his death. The bailment may therefore be considered as entirely divested of this condition, without which it would have been either a *mutuum* or a *deposit*, as will be seen from the following definitions: a *mutuum* is created, when the identical thing bailed is not to be returned, but another thing of the same nature, kind or value; a *deposit* takes place, when the identical thing bailed is to be returned to the bailor. The former is the usual case of a deposit of money with a bank, in the ordinary course of its business, and the property in it is immediately transferred from the bailor to the bailee, and it becomes a mere gratuitous loan, which it is the duty of the bailee to return in kind, on request. The latter may be illustrated, by what is ordinarily termed a special deposit of bills or coin, when they are merely lodged for safe custody, and of which the property remains in the bailor

unchanged      There are, it is true, many other cases of deposit, but this is selected, as best showing the precise difference between this class of bailments, and that of a *mutuum*. It is evident, that in the one case, a use of the thing bailed is contemplated, and not in the other. Although it is generally true of deposits, that the use of the thing bailed is not allowable, yet there are many cases in which it must be contemplated by the parties to the contract, where the use may be necessary to the preservation, or to the benefit of the thing deposited, as in the case of bailment of a horse or milch cow, the depositary would certainly be authorised to use the first, so far, at least, as to preserve it in health, and to milk the latter. But, in the case of a deposit of money, it may be assumed, that there can be no lawful use of it by the depositary, because the use is inseparable from the property. Deposites, from their diversified nature, are subject to no general rule, which will authorise a court to pronounce the user of the thing deposited, a breach of duty in the depositary, but each case must be determined by its own peculiar features, it being necessary, in all cases, to consider whether there may or may not be an implied consent to the use.      These general principles, in relation to the classes of bailment, usually termed *deposit* and *mutuum*, are extracted from the valuable work of Judge Story, and reference may be had to pages 34, 66, 7, 8 and 9.      When these principles are applied to the case on the record, it will be perceived that the evidence was not sufficiently conclusive, to enable the court to pronounce, that the case presented was a *mutuum*, in which aspect alone, would the charge requested by the plaintiff

in error, have been the appropriate one. It is equally clear, that the evidence did not warrant the court in assuming, that such a case of *deposit* was made out, as would make the party responsible without a demand, in consequence of the use of the money delivered. The evidence should have been left to the jury, and they instructed to determine from it, whether the consent of the bailor was given, that the money might be used.

The fact, that the money was not shown to be capable of any identification, was a circumstance from which such an assent might be presumed; while, on the other hand, if the deposit was made with the wife of Derrick, and if it was intended that he should not intermeddle with the money, these circumstances might lead to a contrary conclusion. We do not consider the latter as having the controlling effect which the counsel for the defendant in error contends for: certainly no contract of deposit could be made with the wife, without the consent of the husband, and when assented to, he was lawfully entitled to the possession of the money committed to her; nor is the effect of the written acknowledgment, given before administration, such as is supposed by the counsel for the defendant in error. If the acknowledgment was to control the case, it would establish a *mutuum*, as it speaks not of a special deposit, but of an indebtedness, which is entirely inconsistent with the idea of a pure deposit. The admissions and promises made before the grant of administration, established no liability, and could not change the nature of the bailment.

As the instructions given were calculated to mislead the jury from the consideration of the true question to be

determined, and assumed as proved, a matter proper to be decided by the jury,—the judgment must be reversed, and the case remanded.