[Wright v. Paine, Adm'r.]

# Wright *v.* Paine, Adm'r.   ·

## *Action on Receipts.*

1. *Deposit; contract of, how construed.*—The contract made by the deposit of money, like any other, must be interpreted in the light of the circumstances surrounding the parties, and their relations to each other, at the time it is entered into; these often furnish the most satisfactory solution of the contract, when its character is uncertain or its terms inapt.

2. *Special deposit; what is.*—In the absence of any evidence of the character of the business, in which the depositary was engaged, or other extrinsic facts aiding in the construction of the writing, an instrument signed by the depositary, by which he acknowledges that a third person has deposited with him for "safe keeping" a certain number of dollars in gold coin, which the depositary is to "return whenever called for," will be held to be a special, not a general deposit.

3. *Limitations; statute of, when commences to run.*—In the absence of any evidence of any extrinsic fact, aiding in its construction, a writing by which the depositary acknowledges to have received a certain number of dollars in gold "on deposit, to be paid" to the depositor "on demand"—will be held not to be a contract of bailment, but a loan of money, payable presently or on demand; and the statute of limitations will commence to run against it, not from the date of the *demand*, but from the date of the *writing*.

4. *Demand; when must be made.*—Where a demand is essential, as a condition precedent to an action, it must be made in a reasonable time; the party bound to make it can not postpone it indefinitely, and thereby keep alive claims which would otherwise become dormant and stale; and what is a reasonable time within which to make demand, depends very greatly on the circumstances of the particular case.

5. *Delay; what is unreasonable.*—Where a special deposit of coin was made for safe keeping, and more than seventeen years elapsed, the death of the depositary intervening more than two years, before suit was brought, and eleven years elapsed after the deposit before demand was made for its return, the delay, in the absence of all explanation, was unreasonable.

APPEAL from DeKalb Circuit Court.

Tried before Hon. LOUIS WYETH.

The appellant, William H. Wright, brought this action, on the 17th day of November, 1874, against the appellee, Benjamin F. Paine, as the administrator *de bonis non* of the estate of William O. Winston, deceased, and sought to recover on the following receipts, to-wit:

"Deposited with me, for safe keeping, by William H. Wright, eight hundred and five dollars ($805) in gold, which I am to return whenever called for, this 4th day of November, 1857.          (Signed)          WM. O. WINSTON."

Upon this receipt was the following endorsements:

"Presented for settlement, April 20th, 1872.

     J. N. WINSTON, Adm'r of estate of WM. O. WINSTON."

The second receipt is as follows:

[Wright v. Paine, Adm'r.]

"Received, January 25, 1858, of Wm. H. Wright, forty dollars in gold, on deposit, to be paid him on demand ($40).

(Signed)    W. O. WINSTON, per J. N. WINSTON."

This receipt was also presented to the administrator on the 20th of April, 1872.

The original complaint contained no averment of demand, but simply charged that the money due on receipts was still unpaid. An amendment, averring a demand on Winston in his lifetime, was subsequently made.

The case was tried on pleas of the statute of limitations, non-assumpsit, payment and set off.

One Hamman, a witness for plaintiff, testified that in February, 1869, at the residence of the plaintiff, he heard plaintiff demand of W. O. Winston the money claimed on the receipts, and that said Winston then and there promised to pay or return the gold, saying that it was buried. Two other witnesses testified that they were both intimately acquainted with W. O. Winston, and that they both had conversations with him, soon after the late war, in relation to loss and destruction of his property, and that said Winston said that he had fooled the Yankees and they had not found much of his money. J. N. Winston, a witness for defendant, testified that he was present at the house of plaintiff on the occasion testified to by the witness Hamman, and that he heard no demand made by plaintiff. This was, in substance, all the evidence, and the court, of its own motion, charged the jury: "1. In the case of a deposit of money in gold, silver, or bank notes, which are called and pass as money, the relation of creditor and debtor exists—and this whether the deposit is proven by verbal or written evidence. 2. When a deposit of money is made, the law implies the promise to return or repay it on demand, and an express promise, either verbal or written, is nothing more, and makes the legal obligation no greater or stronger. 3. Upon a deposit of money, returnable or payable on demand, a right of action, or right to sue, immediately attaches. 4. The statute of limitations commences to run as soon as the right of action accrues or commences. 5. In this case the statute of limitations of six years, if pleaded, is a bar to the plaintiff's recovery, if six years have elapsed from the date of the receipts before the suit was brought, and in computing the time you must not count the time from January 10, 1861, to September 23, 1865, four years, eight months and thirteen days. 6. A different rule exists in relation to personal property, other than money, ; for instance, if one deposited a horse with another, to be returned on demand, then the statute would not begin to run until demand made. But money is

a peculiar species of personal property, in regard to which a different rule prevails, as I have above stated." To each of these charges the plaintiff duly excepted, and requested the following written charges : 2. That under said receipts, the plaintiff had no right of action until demand made by Wright of Winston for the money. 3. That the statute of limitations did not begin to run until after demand made. These charges the court refused to give, and plaintiff excepted. There was a verdict and judgment for the defendant, and the plaintiff brings the case here by appeal, assigning the charges given and the refusal to charge as requested, as error.

W. J. HARALSON, and BRAGG & THORINGTON, for appellant.

M. J. TURNLEY, *contra.*

BRICKELL, C. J.—" In the ordinary cases of deposits of money with banking corporations, or bankers, the transaction amounts to a mere loan or *mutuum*, or irregular deposit, and the bank is to restore, not the same money, but an equivalent sum, whenever it is demanded."—Story on Bailments, § 80 ; *Wray v. Tuskegee Ins. Co.*, 34 Ala. 58. It is insisted for the appellant, there is a distinction between a deposit with banks or bankers, and with an individual not engaged in banking. While a deposit with the one, not expressed, or shown by circumstances to have been a *special* deposit, will from the nature and character of the business of the depositary, and its usual course, be regarded as *general*, creating the relation of debtor and creditor—a deposit with the other will be presumed, in the absence of evidence to the contrary, as *special*, creating only the relation of bailor and bailee. The authority which is relied on to support the proposition, does not seem to assert it so broadly. The evidence of the deposit in that case, and of the agreement between the parties, was verbal, and it was shown that they stood in the relation of employer and overseer, the latter depositing bank notes with the former for *safe-keeping.* The relation of the parties, the expressed purpose of the deposit, the fact that the depositary was not engaged in any commercial business, were circumstances which the court held were proper for the consideration of the jury, in determining whether the deposit was *general* or *special.—Duncan v. Magette*, 25 Texas, 246. Beyond this we do not understand the decision to extend, and to this extent it is consistent with our own case of *Derrick v. Baker*, 9 Port. 362. But neither case asserts that the character of business in which the depositary may be engaged, necessarily determines the character of the deposit.

[Wright v. Paine, Adm'r.]

Contracts, verbal or written, are interpreted in the light of the circumstances surrounding the parties, and their relations to each other when they are formed. These circumstances and relations, often aid materially in ascertaining the intention of the parties, and when the character of the contract is uncertain, when its expressions are inapt, may enable the court more satisfactorily to determine what are the obligations it imposes or the rights it confers. If there was nothing more in a transaction resting entirely in parol, than that a farmer, having money, should deposit with a neighbor engaged in the like and no other pursuit, or in no business requiring the frequent use of money, and the deposit was expressed to be for *safe-keeping*, the jury within whose province it would lie to determine whether the deposit was *general* or *special*, would probably conclude that it was *special*, that the purpose of the depositor was the *safe-keeping* of the money, and the duty and liability of the depositary was to *keep safely*. But if the depositary was a merchant, whose business required the frequent use of money, and he was in the habit of receiving money on deposit, there would be more hesitation in pronouncing the deposit *special*—that the depositary could not use the money—that the title to it remained in the depositor, and if it was lost, he must bear the loss, unless fraud or gross negligence could be imputed to the depositary.

The transaction between these parties does not rest in parol—the contracts are in writing, and if the circumstances under which they were made, the relations then existing between the parties, or any other extrinsic fact which could properly be considered, would aid in determining the character of the contracts, no evidence has been given of them. The construction they must bear, depends wholly on the terms in which they are expressed.

The first in point of time, expresses a deposit of a certain sum in gold, and that the purpose is for *safe-keeping*, and that it is to be *returned whenever called for*. The gold is not shown to have been in a sealed package, in a bag, or in a box or chest, nor marked so as to be capable of being separated from other like coin, and of identification, nor is the character or denomination of the coin stated. The promise is unconditional, to *return it whenever called for*—there is no contingency provided by the contract, in which obedience to this promise can be excused. If the transaction was with a bank, banker, or a dealer in money, or with a merchant, or other person engaged in business requiring the frequent use of money, and in the habit of receiving money on deposit, the presumption would be, probably, that the writing im-

SUPREME COURT [Dec. Term,

plied a *general*, not a *special* deposit. Such a deposit would be most advantageous to the depositor—the gold would cease to be his property, and if lost by any casualty, whatever may have been the diligence of the depositary, the obligation to repay it in kind would be absolute. The presumption would also be consistent with the course and usages of business.—*Dawson v. Real Estate Bank*, 4 Pike (Ark.), 297; *Foster v. Essex Bank*, 17 Mass. 477; *Conn. Bank v. Hughes*, 17 Wend. 94. The writing expressing that the purpose of the deposit was *safe-keeping*, would scarcely be sufficient to repel the presumption. But we are without the aid of evidence of the character of the business in which the depositary was engaged, or of any extrinsic fact which would aid in the construction of the writing. Every clause and word of a contract, must have assigned to it some meaning, if possible, and it is not to be presumed parties have deliberately or carelessly employed idle, unnecessary, or unmeaning words and expressions. Construing the instrument by its words alone, we conclude that the *safe-keeping* of the gold was the purpose of the deposit, and the duty imposed was *safely to keep*, and to return *in individuo* when demanded. The deposit was therefore *special*, not *general*.

The other writing is in form of a receipt, and expresses the gold is *payable* on demand. The only duty imposed is the *payment on demand*. There is not, as in the former writing, an express agreement to keep safely, nor any words which are inconsistent with a loan, payable on request. That the money is stated to be received on *deposit*, was, most probably, intended to indicate that it was not a loan bearing interest. Giving due significance to all the words of the writing, and that its terms import a *payment*, not a *return* of the identical money, the contract is not a bailment, but a loan of money, payable presently or on request—a written promise for the payment of a certain sum of money, absolutely and unconditionally, imposing no other duty or obligation than payment, is a promissory note.—*Woolfolk v. Leslie*, 2 Nott & Mc. 575. A promissory note, or other writing for the payment of money on request, or presently, or on demand, is subject to the statute of limitations, and the bar of the statute is computed, not from the day of *demand*, but from the *date* of the note or writing.—Ang. Lim. § 95; *Owen v. Henderson*, 7 Ala. 641; *McDonnell v. Br. Bank*, 20 Ala. 312; *Kimbro v. Waller*, 21 Ala. 376. In all its material features, the writing we are construing is not distinguishable, in legal effect, from that which was considered in *Owen v. Henderson, supra*, and held from the day of its date, within the operation of the statute of limitations. Adhering to that decision,

[Wright v. Paine, Adm'r.]

we must pronounce that the action, so far as founded on this instrument, was within the bar of the statute. The oral declarations made by Winston in 1869, if clearly proved, and if regarded as an unqualified admission of an existing liability, embracing the last instrument, which he was willing to pay, would not remove the bar of the statute, or prevent it from attaching subsequently. The bar of the statute can be avoided only by a partial payment made before the bar is complete, or an unconditional promise in writing.—Code of 1876, § 3240.

As to the other instrument, creating the relation of bailor and bailee, and not that of debtor and creditor, it may be conceded that in the absence of circumstances excusing it, a demand, or something equivalent to it, was a condition precedent to an action founded on it. The demand is for the protection of the bailee, and to save him from the vexation of suit when he may not be in default. When a demand is essential, as a condition precedent to an action, it must be made in a reasonable time. The party bound to make it, can not postpone it indefinitely, and by his procrastination keep alive claims that would otherwise become dormant, and grow stale, the enforcement of which would be offensive to the policy of the law and dangerous to the rights of his adversary. In the case of *Codman v. Rogers*, 10 Pick. 119, it was said by Wilde, J. : " Generally, where a debt is payable in money and on demand, the statute of limitations begins to run immediately after the debt is contracted; but if a demand previous to the commencement of an action is necessary, the statute will not begin to run until a demand is made. But in the latter case, there must be some limitation to the right of making a demand. A party must not be permitted to sleep over his rights, to the prejudice of the party on whom he makes a claim, and who by the delay may be deprived of the evidence and means of effectually defending himself. A demand must be made within a reasonable time; otherwise, the claim is considered stale, and no relief will be granted in a court of equity. What is to be considered a reasonable time for this purpose, does not appear to be settled by any precise rule. It must depend on circumstances. If no cause for delay can be shown, it would seem reasonable to require the demand to be made within the time limited by the statute for bringing the action. There is the same reason for hastening the demand, that there is for hastening the commencement of the action ; and in both cases the same presumptions arise from delay." In the case of *McDonnell v. Br. Bank, supra,* which was an action against the clerk of a court for money collected on a judgment, it

[Wright v. Paine, Adm'r.]

was held the action was not maintainable without proof of a demand, or of a conversion, but it was also held, the demand must be made in a reasonable time after the collection, to avoid the operation of the statute of limitations. What would be considered a reasonable time, it was said, could not be settled by any definite rule, capable of application to all cases, but must depend upon the circumstances peculiar to each case.

If there be any facts or circumstances which can excuse the long delay of the appellant in commencing suit, and in making demand for the money, the record does not disclose them. More than seventeen years elapsed after the special deposit, the death of Winston intervening for more than two years certainly, the precise time not appearing, before suit is instituted. More than eleven years, before any demand for its return was shown. It is almost incredible, that the appellant should have permitted such a sum to remain so long in Winston's hands, without an effort to reclaim it, or an inquiry as to its safety, especially when there is an absence of any fact indicating any peculiar relation between them, inviting confidence, and the indifference, or security, which it may beget. The demand was made, and nearly six years is permitted to elapse, the death of Winston intervening, before suit is brought, and no explanation of this delay is afforded. It would be a dangerous precedent; it would endanger the estates of the dead; it would render the rights of the living uncertain and insecure; it would open the door for the introduction of stale claims, which it has been well said, have often more of cruelty than justice in them; and it would be violative of the policy of the statute of limitations, and defeat the purposes it was intended to accomplish, if without an explanation of the long delay in making demand, and the unwarrantable delay in bringing suit, after the fruitless demand, until Winston was dead, the statute was held not a bar. The statute is now affirmatory of the principle of these decisions. It declares: "When a right exists, but a demand is necessary to entitle the party to an action against any officer, agent, or attorney, the limitation commences from the commission or omission of the act giving the right of action, and not from the demand."—Code of 1876, § 3241.

The instructions given by the Circuit Court may not have been influenced by these considerations, and it may have erred in its construction of one of the writings. The error has worked no injury to the appellant, for the statute of limitations, under the facts, was, in any aspect of the case, a bar to the action, and this was the substance of the instruc-

[Waddell, Adm'r, v. Lanier et al.]

tions given. Whether given for a right or a wrong reason, is not material.

The judgment is affirmed.