# Massie *v*. Byrd.

*Action on Promissory Note, by Payee against Maker's Executrix.*

1. *Confederate money as consideration; past or executed consideration.* In an action on a promissory note, given in April, 1866, for the amount of Confederate treasury-notes collected by the maker, as agent for the payee, during the late war, the measure of the plaintiff's recovery is not the value of the Confederate notes in lawful currency, as it might

[Massie v. Byrd.]

be if the action was founded on the original indebtedness; and the rule as to a past or executed consideration do·s not apply.

2. *When action accrues on note.*—When a promissory note, though made payable "one day after date," contains a further stipulation for the punctual payment of interest annually, and of the principal "on thirty days notice;" a right of action on it, for the principal, does not accrue until the expiration of thirty days after demand or notice, and the statute of limitations does not begin to run until that time.

3. *Same; presumption as to demand or notice.*—When a promissory note, payable thirty days after demand or notice, provides for the punctual payment of interest annually, and it is otherwise shown that a long credit was contemplated; partial payments being made until the death of the maker eight years afterwards, after which the note was filed as a claim against his estate, and an action brought against his personal representative more than ten years afterwards; *held*, that it would be presumed that a demand, putting the statute of limitations in operation, was made within the time prescribed as a bar by the statute of non-claim, and that this presumption was not overcome by proof of a demand in fact made after the expiration of that time.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. JOHN MOORE.

This action was brought by Mrs. Sarah Massie, against Mrs. Maria Byrd, as the executrix of the last will and testament of her deceased husband, Wm. M. Byrd; and was commenced on the 17th January, 1887. The action was founded on a promissory note for $4,500, which was signed by said Wm. M. Byrd, dated April 20th, 1886, and in these words: "One day after date, I promise to pay Sarah Massie forty-five hundred dollars, and will pay the interest annually, punctually, and the principal on thirty days notice." The first count of the complaint alleged that the note was "payable on thirty days notice, which has been given;" and the second, after setting out the note, alleged that notice was given on the 8th December, 1886. Each count alleged that the note was subject to certain credits, or partial payments, indorsed on it; the payments aggregating $4,300, as specified in the second count, and extending from January, 1867, to December 22, 1885.

The defendant filed eight pleas, but the third and fourth were afterwards withdrawn. The first plea was the general issue; the second, want of consideration; the fifth, payment; and issue was joined on each of them. The sixth plea was the statute of limitations of six years. The seventh alleged, that the only consideration of the note was Confederate treasury-notes, of the face value of four thousand dollars, which said W. M. Byrd had collected, as the agent of the plaintiff, in 1863 and 1864, but the real value of which was not more than one thousand dollars; that said Byrd paid

43

three hundred dollars, on account of the debt, at the time of the execution of said note, and afterwards made partial payments, specifying the dates and amounts, "which were more than the value of all of said Confederate treasury-notes so collected, with interest thereon; wherefore defendant says that said promissory note was paid by said Byrd before the commencement of this suit." The eighth plea was also a special plea of payment, in substance the same as the seventh, with the additional averment that the Confederate treasury-notes were collected by Byrd on account of the hire of slaves belonging to plaintiff, and for money loaned by her to one Kent; and with a difference in the amounts and dates of the partial payments.

The plaintiff joined issue on the sixth plea, and filed special replications thereto, numbered from 2 to 5 respectively, as follows: (2.) That said note, setting it out, was payable only on thirty days notice; that the said W. M. Byrd made partial payments on said note, each year, from the time it was given, until his death in the Fall of 1874, and promised in writing to pay it; that the defendant, as his executrix, made partial payments each year, through an agent, which were entered as credits on the note at the special instance and request of said agent, and that plaintiff relied on these as a constant acknowledgment of the debt. (3.) That the said W. M. Byrd made partial payments on said note up to the time of his death, specifying the dates and amounts; and that the defendant, as his executrix, made other partial payments up to December 22d, 1885. (4.) That the note required thirty days notice before it became payable, and the notice was not given until the 8th December, 1886, so that the statute of limitations did not begin to run until January 8th, 1887. (5.) That the statute of limitations did not begin to run, as to the principal of said note, until January 8th, 1887, notice having been given on the 8th December, 1886. The second replication was afterwards amended, by alleging that Byrd was the plaintiff's son-in-law for thirty years, and was a judge of the Supreme Court when said note was given, and was learned in the law; that intimate and confidential relations existed between him and plaintiff until his death, and continued between plaintiff and defendant, who was her daughter, up to the year 1885.

To these replications the defendant demurred and rejoined, as follows: "(1.) Defendant rejoins and takes issue on plaintiff's replication No. 3 to the sixth plea. (2.) And

[Massie v. Byrd.]

for special rejoinder to said replication defendant says, that this defendant did not make any payment on said note within six years next before the commencement of this suit. (3.) And defendant demurs to plaintiff's replication No. 2, and for ground of demurrer says, 1st, that said replication does not show that this defendant made any payment on said note within six years next before the commencement of this suit, or that any payment was made thereon, at any time within six years next before the commencement of this suit, by any other person thereunto authorized by this defendant." A demurrer was also interposed to the 4th and 5th replications, which was sustained by the court, but the demurrer to the 2d was overruled. The defendant then took issue on said 2d replication, and filed special rejoinders thereto, namely: (2.) That said W. M. Byrd died in September, 1874; that the defendant was, on the 26th October, 1874, duly appointed as his sole executrix, and has continued to be such ever since; and that on the 6th August, 1875, plaintiff presented said note to defendant for payment, by filing the same as a claim against the testator's estate in the Probate Court of Dallas county. (3.) That ever since the 26th October, 1874, the defendant has been, and is now, the sole executrix of the will of said Byrd; and that no payment was made on said note within six years next before the commencement of this suit, either by this defendant, or by any other person authorized by her. A demurrer was interposed by plaintiff to each of these special rejoinders, but was overruled; and a demurrer having also been overruled to the seventh and eighth pleas, the judgment-entry recites that the plaintiff "declined to plead further; and it is therefore considered by the court, that the defendant go hence discharged," &c.

The rulings on the pleadings adverse to the plaintiff, and the judgment of the court, are now assigned as error.

R. A. McClellan, and White & White, for appellant. (1.) If a contract is founded on valuable consideration, there can be no inquiry, as between the parties, into its adequacy. In the absence of fraud or duress, parties *sui juris* are free to make their own contracts, and the courts can not inquire into the sufficiency of the consideration which induced them. *Bolling v. Munchus*, 65 Ala. 558; 19 Ala. 765; 77 Ala. 554; 71 Ala. 429; 66 Ala. 151, 160; 1 Chitty on Contracts, 28-32; 1 Parsons on Contracts, 463; 5 Pick. 380; 5 Bing. N. C. 577; 1 Metc. 93. (2.) The note having been given after

the war, the word *dollars* means lawful money of the United States.—8 Wall. 1; 51 Ala. 224. Parol evidence could not be received to show that Confederate money was intended; and it is too late to set up that defense, after admitted payments far in excess of the alleged value of that currency. 103 U. S. 193. Moreover, the note is supported by a sufficient consideration, because it was given in settlement of past dealings and transactions between the parties.—59 Ala. 535; 81 Ala. 464; 77 Ala. 554, 562. (3.) By the terms of the note, the principal was payable "on thirty days' notice;" and notice was not given until Dec. 8th, 1886. Until that time an action on it would not lie, and the statute of limitations did not begin to run.—*Glenn v. Semple,* 80 Ala. 159; 1 Add. Contracts, 406, 407; Angell on Limitations, 113-15; 2 Parsons on Notes, 639-44; Wood on Limitations, 255-63; *Thorp v. Booth,* R. & M. 388; *Sutton v. Toomer,* 7 B. & C. 416; 4 B. & Ald. 594; *Clayton v. Gosling,* 5 B. & C. 360; 54 Md. 548; 2 Daniel on Bills, 1215; 3 Rand. 1608; 72 Mo. 640; 2 Taunt. 323; 8 Dow. & R. 347; 4 Harr. Del. 246; 7 Wait's A. & D. 252. No presumption of notice or demand can be indulged from the lapse of time, since the note shows on its face that long time was contemplated, and the maker might have paid at any time without demand.

PETTUS & PETTUS, *contra.*—(1.) The note was payable one day after date, and bore interest from that time. If the interest had not been paid, an action might have been at once maintained on it; and the plaintiff would have been entitled to recover the entire debt, principal and interest, the contract being one and indivisible.—*O'Neal v. Brown,* 21 Ala. 484; *Railroad Co. v. Henlein,* 56 Ala. 573; *Oliver v. Holt,* 11 Ala. 574. (2.) When a note is payable on demand, the statute of limitations begins to run from its date, and not from the time of the demand.—*McDonnell v. Br. Bank,* 20 Ala. 312; *Owen v. Henderson,* 7 Ala. 641; *Wright v. Paine,* 62 Ala. 344. (3.) If a demand was necessary to put the statute of limitations into operation, the filing of the note as a claim against Byrd's estate was a sufficient demand. *McDowell v. Jones,* 58 Ala. 35; *Allen v. Elliott,* 67 Ala. 436; *Pollard v. Scears,* 28 Ala. 487; *Jones v. Lightfoot,* 10 Ala. 24. (4.) If a demand was necessary, it was required to be made within a reasonable time; and reasonable time means the period allowed by the statute of limitations. *Wright v. Paine,* 62 Ala. 340; *Codman v. Rogers,* 10 Pick,

[Massie v. Byrd.]

119; *Railroad Co. v. Township*, 59 Amer. (36 Kans.) 578. (5.) Confederate money, as a consideration, should be scaled down to its purchasing power at the time it was collected. *Emerson v. Heard*, 81 Ala. 443; *Dickie v. Dickie*, 80 Ala. 57; *Spence v. Railway Co.*, 79 Ala. 576; *Whitfield v. Riddle*, 52 Ala. 467; *Thorington v. Smith*, 8 Wall. 1. (6.) Giving a note for a pre-existing debt does not amount to payment, and does not change the legal obligation of the debt.—*Day v. Thompson*, 65 Ala. 273; 3 Wall. 37-45; 12 Peters, 32; 1 Salk. 124. (7.) The consideration of a note may be impeached by plea (Code, §§ 2667, 2769); and when a partial want of consideration is shown, a recovery is defeated *pro tanto.*—*Holland v. Adams*, 21 Ala. 680; *Dickinson v. Lewis*, 34 Ala. 638; *Kirkpatrick v. Henson*, 81 Ala. 470; Chitty on Contracts, 773; *Long v. Davis*, 18 Ala. 801; Chitty on Bills, 70-71, mar., and notes. (8.) In making contracts, parties *sui juris* are allowed to exercise their own judgment and discretion—to put their own estimate upon the value of the property, services, or other thing in reference to which they are negotiating. But this principle applies only to contracts founded on a present or future consideration. When the consideration is wholly past and executed, and no new consideration is added, the law fixes its value, and a recovery on a breach is limited to that value. This distinction is recognized by text-writers, and illustrated by numerous adjudged cases.—1 Parsons on Contracts, 472-3; Whart. Contracts, § 514; 2 Chitty on Contracts, 71, 11th Amer. ed.; 2 Amer. Lead. Cases, 125-6; *Roscorla v. Thomas*, 3 Q. B. 234.

CLOPTON, J.—The suit, which is brought by appellant, is founded on a promissory note made by the testator of appellee, of which the following is a copy:

"$4,500. One day after date I promise to pay Sarah Massie forty-five hundred dollars, and will pay the interest annually, punctually, and the principal on thirty days notice.

"April 20, 1866. 　　　　　　　　　W. M. BYRD."

The seventh and eighth special pleas allege, that in 1863 and 1864 defendant's testator, as the agent of the plaintiff, collected about forty-five hundred dollars, in Confederate treasury-notes, and on April 20, 1866, paid her three hundred dollars, and executed the note sued on, for and in consideration of the Confederate treasury-notes so collected, without any other consideration. The pleas further aver,

that the real value of the treasury-notes when collected was one thousand dollars, and that payments exceeding that amount were made on the note during the life-time of the testator. The defense thus set us is, want of consideration as to a part, and payment of the balance of the note.

In general, the consideration of a note is open to inquiry, and parol evidence of the actual consideration may be received for the purpose of determining its legality or sufficiency to support the contract. The note is evidence that it was made on sufficient consideration, but it may be impeached by plea.—Code, 1886, § 2769. When the consideration of a contract in writing is divisible—when two or more distinct things or matters enter into and constitute the consideration— inquiry may be made as to either one of such things or matters, for the purpose of determining its sufficiency, and a recovery may be had for the part of the contract supported by sufficient consideration, and defeated as to the balance. *Holland v. Adams*, 21 Ala. 680, and *Dickerson v. Lewis*, 34 Ala. 638, afford illustrations of this rule. Inadequacy of consideration is not, of itself, a ground of relief against a contract, unless it is so gross as to amount to fraud or undue advantage. Parties *sui juris* may determine, in making contracts, the adequacy of the consideration, and, if of real value, it need not be adequate in order to support a contract deliberately made with knowledge of the facts. In the absence of circumstances of fraud, imposition, or undue advantage or influence, there can be no inquiry into, and no adjustment of the value of the consideration, if valuable. When such circumstances are wanting, and the consideration is entire and indivisible, its extent and value are not subjects of inquiry in an action at law to enforce the contract, for the purpose of determining its partial sufficiency, and to defeat a proportional recovery.—*Bolling v. Munchus*, 65 Ala. 558; 1 Pars. Contr. 436.

But appellee invokes the rule as to a past or executed consideration. The general rule is, that an executed consideration will not support an express promise, unless induced at the instance or request of the party promising, or the past transaction is of such a nature that the law will imply a promise. When the promise is implied from the character of the executed transaction, a subsequent promise is supported, and will be enforced, only so far as co-extensive with the amount or value of the past consideration. If the prior promise, whether express or implied, is to pay a determinate

[Massie v. Byrd.]

sum, or value, for the definite ascertainment of which the
contract or the law furnished the standard, a subsequent
promise to pay a larger sum is unsupported by a sufficient
consideration as to the excess. But, when the amount of a
past unliquidated demand is ascertained and agreed on by
the parties, a new promise to pay the amount so ascertained
is supported by a sufficient consideration.

The pleas show that the consideration of the note is valu-
able, and entire and indivisible, consisting of a liablility or
indebtedness on account of Confederate treasury-notes col-
lected by the maker as agent of the plaintiff, which he had
failed to pay over, or to account for, until the execution of
the note. The duty and obligation of an agent, who col-
lected Confederate treasury-notes during the war, was to pay
them over to his principal. On his failure to do so, and
their appropriation to his own use, the law did not. imply a
promise to pay only their value in the currency of the
United States. There was neither an express nor an implied
promise to pay any determinate sum or value other than their
face amount. The demand was unliquidated in respect to
the amount that should be paid after the close of the war.
It is true that, since then, the courts generally have en-
forced such contracts only to the extent of their just obliga-
tion, and that the measure of recovery is the value in lawful
money of the United States, at the time of making the con-
tract, of the Confederate dollars agreed to be paid.— *Whit-
field v. Riddle*, 52 Ala. 467; *Wyatt v. Evans*, 52 Ala. 285;
*Thorington v. Smith*, 8 Wall. 1. But, these and similar de-
cisions rest, not on a partial want of consideration, but on an
agreement or understanding of the parties, that the note was
to be paid in Confederate dollars. If no such agreement or
understanding was proved, the amount of the note was col-
lectible.—*Cook v. Lillo*, 103 U. S. 792; *Confed. Note Case*,
19 Wall. 548. It may be, had the present action been
founded on the original indebtedness of the defendant's tes-
tator, the plaintiff could have recovered only the value of the
Confederate money collected. But when, after the restora-
tion of peace, he deliberately, and with knowledge of the
facts and his rights, executed the note sued on, payable in
lawful money of the United States, he waived the right to
limit plaintiff's recovery to the value of Confederate money
in a suit on the note. This may often work a hardship, and
probably the ends of justice would be better accomplished, if,
on any sound principle, the recovery could be measured by

[Massie v. Byrd.]

the value of the consideration. But a different rule would open the consideration of every contract in writing to investigation and adjustment in exact proportion to its real value. *Trustees of How. Coll. v. Turner*, 71 Ala. 429.

The sixth plea of defendant sets up the statute of limitations, and raises the question, at what time did the statute begin to run against the note. The language of the statute is: "Civil suits must be commenced after the cause of action has accrued, within the period prescribed in this chapter, and not afterwards."—Code, 1876, § 3223. Under the statute, the question is, when did the cause of action accrue on the note? Counsel for the appellee insist, that the note became due and payable, by its terms, one day after date, and that plaintiff could then have commenced an action, without any demand being previously made. In the construction of all written contracts, the fundamental rule is the ascertainment of the intention and mutual understanding of the parties. Their condition, the terms and nature of the contract, and the objects in view, all are to be regarded. The substantial purpose and purport, as collected from the entire instrument, will control the separate parts, intended as the means of its accomplishment. The note consists of two promises—one to pay one day after date; the other, to pay the interest annually, and the principal on thirty days notice. It was given about a year after the restoration of peace, in consideration of an antecedent indebtedness, created by the collection of Confederate notes, without claiming any reduction. Considering the circumstances and the language of the note, it is evident that the parties intended and contemplated delay, probably long delay, in the payment of the principal, but annual payment of the interest. In construing the note, some effect should be given to each word and phrase. Looking to all the provisions of the note and the circumstances, the words "one day after date," it seems, were intended and used to fix the time from which interest should begin to run, and after which the payee might, at any time, give notice to pay the principal; and the other provisions were intended to qualify the general operation of these words, and fix the times when the interest and principal should be payable respectively. It is not an unconditional and absolute promise to pay the principal and interest one day after date. This construction accomplishes the evident purpose of the parties, and gives effect to each part of the note.—*Jameson v. Jameson*, 72 Mo. 640. As to the principal, the note has the same

effect and operation as a note payable thirty days after demand or notice.

The authorities all concur, that a note for the payment of money on demand becomes due *instanter*, and a cause of action accrues thereon at once, and that the statute of limitations begins to run from that date.—*Owen v. Henderson*, 7 Ala. 641; *Mobile Sav. Bank v. McDonald*, 83 Ala. 595. But they somewhat conflict as to the time when the limitation begins to run against a note payable a given number of days after demand. In *Palmer v. Palmer*, 36 Mich. 487, it was held, that a cause of action accrues, for the purpose of setting the statute of limitations in motion, as soon as the creditor, by his own act, and in spite of the debtor, can make the demand payable; and that a note, payable thirty days after demand, is barred in six years after the expiration of thirty days from its date. This case has been severely criticised, as abrogating the contract of the parties, and incorporating a provision in the statute not intended by the legislature. Without reviewing them, we may remark generally, that the great weight of authority supports the doctrine that on such note a cause of action does not accrue, and the statute of limitations does not begin to run, until demand is made. Wood on Lim. § 118; Angell on Lim. 95; *Rhind v. Hyndman*, 54 Md. 527, where the authorities are cited. In *Mc-Donnell v. Br. Bank at Mont.*, 20 Ala. 313, the rule, that the statute begins to run against a note, payable so many days after demand, from the demand, is stated with seeming approval; the reason assigned being, that until that time the action does not accrue. We, therefore, hold, that by the contract of the parties, a cause of action did not accrue as to the principal of the note, until notice was given as provided therein.

Counsel for the appellee further insist, that if it be held that notice is essential to the accrual of a cause of action, it should have been given, and suit brought, within six years from the date of the note. In *McDonnell v. Br. Bank of Montgomery*, *supra*, the suit was against a clerk, for money collected on a judgment. It was held that, in the absence of a conversion, no action could be maintained until the clerk was in default by refusal to pay on demand, and that the statute dates its commencement from the demand; but it was also held that the demand must be made within a reasonable time after the collection of the money. In *Wright v. Paine*, 62 Ala. 340, which was a suit to recover money deposited, it

[Massie v. Byrd.]

was held that a demand was a condition precedent to the action; but it is said: "When a demand is essential, as a condition precedent to an action, it must be made in a reasonable time.   .   .   .   The demand was made, and nearly six years is permitted to elapse, the death of Winston intervening, before suit is brought, and no explanation of this delay is afforded. It would be a dangerous precedent; it would endanger the estates of the dead; it would render the rights of the living uncertain and insecure; it would open the door for the introduction of stale demands, which, it has been well said, have often more cruelty than justice in them; and it would be violative of the policy of the statute of limitations, and defeat the purposes it was intended to accomplish, if, without an explanation of the long delay in making demand, and the unwarrantable delay in bringing suit, after the fruitless demand, until Winston [the bailee] was dead, the statute was held not a bar."

From these cases, the following principles may be deduced: (1.) When a demand is a condition precedent to a cause of action, the statute of limitations does not begin to run until demand is made.   (2.) But, in such case, the demand must be made in a reasonable time.   (3.) Delay in making the demand, and bringing suit within such period, may be explained and excused.   It will be observed that, in none of these cases, was a delay in making the demand contemplated or intended; and in *Palmer v. Palmer, supra*, where it was held that the limitation begins to .run at the expiration of thirty days from the date of the note, it is said:   "It may be otherwise, possibly, where delay is contemplated by the express terms of the contract, and where a speedy demand would manifestly violate its intent." In *Glenn v. Semple*, 80 Ala. 159, the rule was applied, that when money is to be paid, or a thing is to be done, on the happening of a contingency or uncertain event, no cause of action accrues, and the limitation does not run, until the contingency happens, or the event takes place.   It was held, that when the terms of subscription to the capital stock of a corporation bind the subscribers to pay "in such installments as may be called for by said company," a cause of action does not accrue, and the statute does not commence to run, until a call is made by the company, or an assessment and call is made by the decree of a court having jurisdiction.   Parties may make their own contracts, and may agree upon a long or short credit, or upon a given number of days or months after demand.   The

Vol. lxxxvii.

[Massie v. Byrd.]

statute of limitations was not intended to abrogate these rights, or to prevent parties from agreeing upon a term of credit however long. The decisions of this court recognize an obvious distinction between cases where a demand is essential to a cause of action, and no delay in making the demand is contemplated, and where delay is contemplated and intended. In none of them is it held, that when a demand is a condition precedent to bringing an action, it must be made and suit brought within the period prescribed by the statute of limitations. Whether or not the action is barred, is made dependent on the particular circumstances of the case, without attempting to define or declare, inflexibly, what is a reasonable time, in which the demand must be made. In a court of law, this is a question for the jury.

Fully appreciating the beneficial policy of the statute of limitations, having for its purpose the discouragement of stale demands, the security of repose and quiet, and the protection of parties from unjust and oppressive litigation, when the circumstances of the transaction and the injustice of the claim can not be shown because of the lapse of time, we realize the importance and necessity of some rule, which will avail, even in cases where long delay may be contemplated or intended, to accomplish the purposes of the statute, and promote its policy, without infringing the contract of the parties, or extending the statute beyond its terms liberally construed. While the rule in equity, in respect to stale demands and the assertion of claims, which is applied in the cases cited, may not be strictly applicable in a court of law, which is governed alone by the provisions of the statute of limitations; "courts of law will presume a demand from the lapse of time, especially when the circumstances render it improbable that it should be neglected."—Wood on Lim. § 125. On this presumption a consistent rule may be predicated.

The note sued on was made in April, 1866, and it is averred in the replications to the plea of the statute of limitations, that notice was not given until December, 1886, after the lapse of more than twenty years. The maker died in 1874; but partial payments were made by him to 1873. The note was filed as a claim against the estate, within the time the statute requires claims against the estates of deceased persons to be presented. The purpose of this is to require and promote the speedy settlement of estates. The delay of giving notice, contemplated by the parties, evidently terminated with the death of the maker. The circumstances render it

improbable that giving the notice would be thereafter neglected. Considering the long period the note was permitted to run, the termination of the contemplated delay by the intervening death of the maker, the policy of the statute of limitations, and the purpose of requiring the presentation of claims, and the actual presentation of the note as a claim against the estate of the deceased maker, we are of opinion, without attempting to establish an inflexible rule, applicable to all cases, that under the circumstances of this case, a court of law will presume that a demand was made within the statutory period for the presentation of claims against the estates of deceased persons. An analogous rule was held in *Keithler v. Foster*, 22 Ohio St. 27. It is said: "Since then it is settled in this State, that the statute begins to run in cases like this from the time of demand, it would be but reasonable to hold, in the absence of other special circumstances, where no demand is shown to have been made within the statutory period for bringing the action, that for the purpose of setting the statute in operation, a demand will be presumed at the expiration of that period from which the statute will begin to run." This seems to be a reasonable and logical rule, which meets the requirements of the law in both classes of cases, where delay is and is not contemplated or intended, and does no violence to the contract of the parties, nor unduly extends the statute of limitations. On this presumption, the application of the rule in equity, as made in *Wright v. Paine*, *supra*, may be rested, and all the cases harmonized, without disturbing the former rulings. The presumption may be overcome; but, in order to overcome its force, and arrest the running of the statute, circumstances must be shown sufficient to explain and excuse delay in the assertion of claims, that would otherwise be deemed stale. Mere proof that demand was made in fact at a time later than that at which the law presumes a demand, is of itself insufficient.

The second replication of plaintiff, as amended, alleges facts which are intended as an explanation or excuse for the delay in giving notice. The court overruled a demurrer to this replication, and hence its sufficiency is not a question for our consideration. There was no error in sustaining the demurrer to the fourth and fifth replications. Plaintiff's demurrer to defendant's second and third rejoinder to the second replication should have been sustained. The third replication alleges that partial payments were made on the

[Jackson v. Rowell.]

note by the defendant's testator to November, 1873, and by the defendant, as executrix, to December, 1885. The defendant joined issue on this replication, and for a special rejoinder averred that she did not make any payments on the note at any time within six years next before the commencement of the suit. As the replication alleges that such payments were made, and the rejoinder that they were not made, there was a sufficient joinder on an issue of fact. Under our system of pleading, as provided and regulated by the Code, and the forms of pleas established, a formal *similiter* in such case is unnecessary. These conclusions render unnecessary a decision of the other questions argued by counsel.

Reversed and remanded.

McCLELLAN, J., not sitting, having been of counsel.