STATE, RESPONDENT, *v.* KARRI, APPELLANT.

(No. 3,536.)

(Submitted May 14, 1915.  Decided June 24, 1915.)

[149 Pac. 956.]

*Criminal Law — Larceny by Bailee — Loan for Exchange —*
*Grand and Petit Larceny—Instructions.*

Larceny by Bailee—What does not Constitute.
    1.  Where K. obtained a check from B. under an agreement that he
would use the proceeds in his own business for cashing miners' pay
checks and repay the amount on a certain day, the transaction amounted
to a loan for exchange, as defined by section 5201, Revised Codes, title
to the money being transferred to the borrower, the loan to be repaid at

some future time. His appropriation of it, therefore, to a use other than that for which it was advanced did not render him liable to a prosecution for larceny as bailee under subdivision 2 of section 8642, which makes title to the subject of the larceny in the person who has entrusted its custody or control to the defendant, a prerequisite to the crime.

[As to larceny of money borrowed, see note in 46 Am. Rep. 183.]

Grand and Petit Larceny—Instructions.

2. Where defendant is charged with grand larceny, the value of the property alleged to have been taken being admittedly in excess of $50, instructions as to petit larceny should not be submitted.

*Appeal from District Court, Silver Bow County; Michael Donlan, Judge.*

OSKAR KARRI was convicted of grand larceny as bailee, and appeals from the judgment of conviction and an order denying him a new trial. Reversed and remanded, with directions.

*Messrs. Binnard & Rodger,* for Appellant, submitted a brief; *Mr. Jos. Binnard* argued the cause orally.

The transaction between defendant and Browne & Flannigan was not a bailment, but more in the nature of the loan of money to be used by the borrower, and repaid to the lender in other money equivalent in kind and amount. We find discussed in the American and English Encyclopedia of Law, second edition, 736, the relation known to the Roman law as *mutuum,* which closely resembles the transaction in the case at bar. By *mutuum* is understood the lending of money, wine, corn and other things that may be valued by number, weight or measure, and are to be restored only in equal value or quantity. (Jones on Bailments, sec. 74; Story on Bailments, sec. 47.) "If a person leaves money with another, with the understanding not that the same identical money is to be returned, but only a like amount, and the money is lost without fault of the receiver, as the transaction is not a bailment but creates the relation of lender and borrower, the depositary is liable." (3 Rul. Cas. Law, sec. 5, pp. 74, 75; *Coldwell* v. *Hall,* 60 Miss. 330, 44 Am. Rep. 410; *Chase* v. *Washburn,* 1 Ohio St. 244, 59 Am. Dec. 623; *Caldwell* v. *Hall,* 60 Miss. 330, 44 Am. Rep. 410; *Carl-*

*yon* v. *Fitzhenry,* 2 Ariz. 226, 15 Pac. 273; *Kellogg* v. *State,* 26 Ohio St. 15; *Krause* v. *Commonwealth,* 93 Pa. St. 418, 39 Am. Rep. 762.)

No appearance on behalf of Respondent.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

On November 1, 1913, the defendant was charged by information in the district court of Silver Bow county with grand larceny as bailee. A trial upon his plea of not guilty resulted in his conviction of petit larceny and his sentence to a term of six months in the county jail. He has appealed from the judgment and an order denying his motion for a new trial.

The charging part of the information is as follows: ''That at the county of Silver Bow, state of Montana, on or about the 9th day of July, A. D. 1913, and before the filing of this information, the said defendant then and there having in his possession, custody, and control, as bailee of Browne & Flannigan Company, a corporation, certain personal property, to-wit, money, in amount and of the value of $1,000, lawful money of the United States of America, did willfully, unlawfully, knowingly, fraudulently, intentionally, and feloniously appropriate said money to his own use, with intent in him (the said defendant) then and there to deprive and defraud the true owner, the said Browne & Flannigan, a corporation, of its said property, and of the use and benefit thereof, and to appropriate the same to his (the said defendant's) own use.''

Several contentions are made in defendant's behalf, among them that the verdict is contrary to the evidence. We shall notice this contention only, for the record discloses a state of facts upon which a conviction of either grand or petit larceny cannot be sustained. There is no material conflict in the evidence. The testimony of the state's witnesses tends to show [1] the following: Prior to July 9, 1913, the defendant had been conducting a saloon in Butte. He had been purchasing goods to keep up his stock, from various wholesale dealers do-

ing business in Butte, among others the Stromberg-Mullins Company; purchases from it being made through one Palmer, the company's solicitor. Having left the employment of this company and entered that of Browne & Flannigan Company, another wholesale dealer, Palmer sought to induce the defendant to make his purchases exclusively from it. This the defendant finally agreed to do. On the date mentioned, the defendant, in company with Palmer, went to the business place of Browne & Flannigan Company, and there met J. P. Browne, who was in charge for the company. After some conversation touching his financial responsibility, he made a purchase of goods to the amount of several hundred dollars. He represented to Browne that, if he could secure the sum of $1,000 to use on pay days for the purpose of cashing miners' pay checks, he would be able to attract customers and largely increase his sales; it being the custom of many of the miners to get their pay checks cashed at places where they dealt. The miners were paid on any day of the month from the 9th to the 15th, inclusive, according to the rule which prevailed at the particular mine where one happened to be employed. The result of the negotiations was that Browne gave the defendant a check of the company for $1,000, upon the agreement and understanding that he was to use the proceeds exclusively for the purpose of cashing checks, and to repay the amount on the 15th. He failed to make repayment. Thereupon Browne procured his arrest and prosecution for larceny of the amount so advanced to him. The defendant testified that the money was advanced, not to enable him to cash checks, but to discharge accounts due to other dealers, so that they would not press him for payment or resort to legal proceedings to enforce payment; he being indebted at the time to the amount of $3,000. He further testified that it was the understanding that he was thereafter to purchase from Browne & Flannigan Company exclusively, and that additional advancements were to be made to him to enable him to discharge all of his indebtedness to others, thus constituting Browne & Flannigan Company his sole creditor.

Whether the advancement was made for the one purpose or the other is not material.

The court adopted the theory that if the story of the transaction, as narrated by the state's witnesses, was true, the defendant became the bailee of Browne & Flannigan Company and was guilty of larceny; but that otherwise the transaction was a loan and the defendant was entitled to acquittal. That this theory is erroneous is clear, when we note the legal distinction between a bailment created by the mere loan of a thing to be returned, and a loan for exchange. A bailment of this class is the holding of possession by one person of personal property for a temporary purpose, subordinate to the title of another, who, as between the parties, has the right of possession when the purpose of the bailment has been accomplished. (4 M. A. L., p. 71.) By accepting the property, the bailee does not acquire title, but acknowledges the bailor's title, and assumes, with reference to the subject of the bailment, a position of trust and confidence, and this relation continues until the thing loaned is returned to the bailor or has been lawfully accounted for. (*Pulliam* v. *Burlingame*, 81 Mo. 111, 51 Am. Rep. 229.) The bailee has a special property in the thing as against strangers, but as against the bailor no right, except such as he has acquired under the terms of the contract, and, when the purpose of the bailment has been served, this right ceases, and he is bound to return the thing to the bailor. A loan for exchange is defined by the statute as a "contract by which one delivers personal property to another, and the latter agrees to return to the lender a similar thing at a future time, without reward for its use." (Rev. Codes, sec. 5201.) "By a loan for exchange, the title to the thing lent is transferred to the borrower, and he must bear all its expenses, and is entitled to all its increase." (Section 5203.) The subject of the loan thus becomes the property of the borrower, and he assumes, under the contract, not a position of trust and confidence with relation to the thing borrowed, but merely the obligation to repay the lender in kind at the time fixed by the contract. The

transaction is what was known in the Roman law as a *mutuum*, and is regarded in our law as of the nature of a sale, because the effect of it is to transfer the title when the subject of the loan is a chattel and to create the relation of debtor and creditor. When money is involved, the transaction is closely analogous to a deposit for exchange, as defined in section 5138, Revised Codes. (Story on Bailments, secs. 283, 439; 3 Am. & Eng. Ency. Law, 736; 3 Rul. Cas. Law, pp. 74, 75; *Caldwell* v. *Hall*, 60 Miss. 330, 44 Am. Rep. 410; *Chase* v. *Washburn*, 1 Ohio St. 244, 59 Am. Dec. 623; *Lonergan* v. *Stewart*, 55 Ill. 44; *Wright* v. *Paine*, 62 Ala. 340, 34 Am. Rep. 24.)

The obligation assumed by defendant to Browne & Flannigan Company was therefore not that of a bailee but of a mere debtor. That he accepted the check with the understanding that its proceeds were to be devoted to one purpose, and then devoted them to a different purpose, thus violating faith to the company, is not of importance in determining the question whether he became criminally liable. The title to the money having passed to him, his appropriation of it to a use, other than that for which it was advanced, did not amount to a conversion of it, without which he could not commit larceny under the statute. (Rev. Codes, sec. 8642.) For under the second subdivision of this section, under which the charge in this case was preferred, title to the subject of the larceny must be vested in a person who, for the time being, has intrusted its custody or control to the person who is charged with having misappropriated it. However reprehensible, therefore, the conduct of the defendant may have been, he was not guilty of larceny. The trial court should have directed his acquittal.

It may be remarked that, under the facts disclosed in this [2] case, the submission to the jury of instructions under which they were authorized to find defendant guilty of petit larceny was wholly indefensible. Upon the assumption that he might have been found guilty of grand larceny, there was no evidence in the case to justify the jury in even considering whether he was guilty of petit larceny. Instructions as to the

lower grade of the crime should not be submitted in any case in which the charge is grand larceny, when the value of the property alleged to have been taken admittedly is in excess of $50.

The judgment and order are reversed, and the cause is remanded to the district court, with directions to discharge the defendant.

*Reversed and remanded.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.